J-S24021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEONARD F. ADAMS, JR. | : | No. 1635 MDA 2022 |

Appeal from the PCRA Order Entered November 8, 2022
In the Court of Common Pleas of Columbia County Criminal Division at
No(s):  CP-19-CR-0000933-2017

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED: JULY 26, 2023**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Columbia County, granting relief in the form of a new trial to Leonard F. Adams, Jr., pursuant to his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Upon our review, we reverse and reinstate Adams' judgment of sentence.

This Court has previously set forth the factual and procedural history of this case as follows:

> [Adams] was charged with indecent assault[1] for repeatedly having indecent contact with S.H., [his step-granddaughter,] an

---

[*] Former Justice specially assigned to the Superior Court.

[1] "A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with
*(Footnote Continued Next Page)*

eleven-year-old girl. As this was not the first time he had been investigated regarding his conduct with a minor, [Adams] filed a pre-trial motion *in limine* to exclude any references to the prior investigation by Children and Youth Services ("CYS"). The trial court granted the motion on the record. ***See*** N.T. Trial, 7/19/19, at 4.

At trial, in addition to the testimony of S.H., S.H.'s mother, and a forensic interviewer, the Commonwealth offered the testimony of two individuals present when [Adams] was interviewed at the Bloomsburg barracks of the Pennsylvania State Police: Jennifer Edgar, a CYS caseworker, and Trooper Eric Shellenberger. The latter two witnesses provided consistent testimony about the admissions [Adams] made during that interview. However, during the prosecution's questioning of [] Edgar, the jury heard the following:

> Q. During the interview on November 8th of 2017, did [Adams] make any statements relating to touching S[.H.]?
>
> A. Yes.
>
> Q. What statements did he make?
>
> A. He informed us that he knew why he was there. He said that his son told him he was being blamed for sexually abusing S[.H]. He also informed us that he was accused in the past of molesting—
>
> > [Defense counsel]: Objection.
> >
> > The Court: Sustained.
>
> [] Edgar: He admitted that he had tickled her, he said that it was under her arms, it could have been under her shirt, he couldn't remember. Later he did state that he tickled her under the shirt and then he informed us that he did rub her

---

seminal fluid, urine[,] or feces for the purpose of arousing sexual desire in the person or the complainant and . . . the complainant is less than 13 years of age[.]" 18 Pa.C.S.A. § 3126(a)(7). "An offense under subsection (a)(7) is a misdemeanor of the first degree unless any of the following apply, in which case it is a felony of the third degree: (ii) There has been a course of conduct of indecent assault by the person." ***Id.*** at § (b)(3)(ii). "Course of conduct" as used in section 3126 imposes a requirement of more than one act over time. ***Commonwealth v. Kelly***, 102 A.3d 1025, 1031 (Pa. Super. 2014).

breasts. He told her that she was becoming a big girl while he was doing that to her. He also informed us that he did go down her pants, [but] it was on top of her underwear. He said that he had touched her vagina directly one time and the other time was above the vagina. And he also told her not to tell anyone because he would get in trouble.

*Id.* at 91-92.

The Commonwealth did not mention this reference to the past accusation in its closing argument when summarizing [] Edgar's testimony concerning [Adams'] admissions. *See id.* at 236-39. Nor does the record reflect that [Adams] moved for a mistrial or requested a limiting instruction based upon [] Edgar's statement.

The jury found [Adams] guilty of indecent assault and determined that his actions constituted a course of conduct, which caused his crime to be graded as a third-degree felony. *See* Verdict, 7/19/19; 18 Pa.C.S.[A.] § 3126(b)(3)(ii). [Adams] was sentenced [to 11 ½ to 23 months of incarceration] on December 5, 2019. In a timely post-sentence motion, [Adams] requested a new trial due to [] Edgar's improper testimony, although he acknowledged that "there was no request for a motion to strike, a request for a mistrial, or even a limiting instruction by counsel nor was there [one] given by [the trial court]." Post-Sentence Motion, 12/11/19, at ¶ 12. The trial court denied [Adams'] motion, and [Adams appealed].

*Commonwealth v. Adams*, 82 MDA 2020, at *1-*3 (Pa. Super. filed Jan. 8, 2021) (unpublished memorandum decision).

On appeal, Adams asserted that the trial court erred in failing to declare a mistrial or give a limiting instruction with regard to Edgar's testimony, a claim this Court found to be waived for Adams' failure to timely request such relief at trial. Accordingly, we affirmed Adams' judgment of sentence. *See id.* Adams filed a petition for allowance of appeal, *nunc pro tunc*, with our Supreme Court, which the Court denied on May 11, 2022. *See id.*, 278 A.3d 302 (Pa. 2022) (Table).

On June 8, 2022, Adams filed a counseled PCRA petition in which he alleged the ineffectiveness of trial counsel, Franklin Kepner, Esquire, for failure to request a limiting instruction or mistrial in relation to Edgar's testimony. The PCRA court held a hearing on October 6, 2022, at which time Adams abandoned his claim regarding Attorney Kepner's failure to request a cautionary instruction and proceeded only on the issue of counsel's failure to request a mistrial. Upon questioning by Adams' counsel as to why he did not request a mistrial, Attorney Kepner testified that "[a]t that time I did not think it was appropriate to ask for a mistrial." N.T. PCRA Hearing, 10/6/22, at 11.

Following the submission of briefs by the parties, the PCRA court granted Adams a new trial, concluding that Adams' claim had arguable merit, Attorney Kepner had offered no reasonable basis for his failure to request a mistrial and that Edgar's testimony "was certainly prejudicial to [Adams]." PCRA Court Order, 11/8/22, at n.1. The Commonwealth filed this timely appeal, in which it raises one claim for our review: "Whether the [PCRA] court committed an error of law in concluding [] trial counsel was ineffective and in granting [Adams] a new trial[.]" Brief of Appellant, at 6.

In reviewing an order granting relief under the PCRA, this Court's standard of review is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Hipps**, 274 A.3d 1263, 1266 (Pa. Super. 2022).

Here, the PCRA court granted Adams relief on the basis of an ineffectiveness of counsel claim. A PCRA petitioner will be granted relief on

such a claim only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. **Commonwealth v. Dennis**, 950 A.2d 945, 954 (Pa. 2008). To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. **Strickland v. Washington**, 466 U.S. 668, 687 (1984). A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id.** at 694. Under the **Strickland** test, a petitioner is required to prove: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission. **Commonwealth v. Tedford**, 960 A.2d 1, 12 (Pa. 2008), citing **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987) (adopting U.S. Supreme Court's holding in **Strickland**). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, 66 A.3d 253, 260 (Pa. 2013) (citation omitted).

> Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests.

- 5 -

Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Spotz*, 84 A.3d 294, 311–12 (Pa. 2014) (internal citations, quotation marks, and brackets omitted).

Moreover, a mistrial "is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Commonwealth v. Hogentogler*, 53 A.3d 866, 878 (Pa. Super. 2012) (citations omitted).

In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

*Id.* at 877-78.

Here, the Commonwealth argues that Adams failed to establish the third prong of the *Strickland* test, i.e., prejudice. The Commonwealth asserts that

Adams has not demonstrated that a mistrial would have been granted had it been requested and, indeed, there were no grounds for a mistrial, because while Edgar's testimony merited an objection, such objection "was promptly made and ruled on prior to any prejudice to [Adams that] would rise to the level of warranting a mistrial." Brief of Appellant, at 14. The Commonwealth argues:

> Edgar's testimony was in response to the question[:] "During the interview on November 8, 2017, did [] Adams make any statements relating to touching [S.H.]?" [When Edgar responded, "Yes," the Assistant District Attorney went on to ask,] "What statements did he make?" Therefore, for all the jury knew, [Adams, in the statement recounted by Edgar,] was referring to the same victim, which certainly would not [have been] prejudicial[,] since [Adams] was charged with a course of conduct. The allegations presented to the jury by the Commonwealth were that [Adams] engaged in a course of conduct with [S.H.] over a period of time which ended September 10, 2017. [Adams'] interview took place on November 8, 2017. There was nothing in the testimony to inform the jury that [Adams] was referring to anyone other than [S.H.]

*Id.* at 16.

The Commonwealth further points out that the court instructed the jury that it was to disregard any testimony to which an objection is sustained and that, "[i]n the context of 270 pages of testimony and instructions," it is "completely unreasonable" to claim that the jury was so tainted by a half sentence of testimony that it could not render a fair and impartial verdict. *Id.* at 20.

In response, Adams argues that the reference to past accusations could not reasonably be presumed by the jury to refer to the course of conduct

against S.H. for which Adams was currently on trial, but rather to "prior investigations against him relating to the same complaining witness." Brief of Appellee, at 8. Adams argues that, despite a trial court's instructions to the contrary, "[t]here are some statements that a jury cannot unhear [and] these statements are so prejudicial that a mistrial must be requested and granted." *Id.* Because there was no physical evidence, the case against Adams turned on who the jury believed more. Under such circumstances, Adams argues, "[h]aving a statement [that] alerts the jury that this is not the first time that [Adams] had been investigated for such an offense is so prejudicial" that a mistrial was appropriate, and that "sustaining [defense counsel's] objection does not cure the prejudicial effect of the statement." *Id.* at 9.

We agree with the PCRA court and both parties that Adams' claim has arguable merit and that trial counsel lacked a reasonable basis for his failure to request a mistrial. *Strickland*, *supra*. However, Adams has failed to establish prejudice, as there is not a reasonable probability that the outcome of his trial would have been different had the jury not been exposed to the single, unfinished sentence uttered by Edgar. Contrary to Adams' characterization, this was not simply a "he said/she said" case in which the credibility of the victim was the sole determining factor. Rather, Edgar and Trooper Shellenberger each testified that Adams admitted to the conduct at issue.

Specifically, Edgar testified that Adams stated in his interview at the State Police barracks that he had tickled S.H. under her shirt, rubbed S.H.'s

breasts, went "down her pants . . . on top of her underwear," and "touched her vagina directly one time." N.T. Trial, 7/19/19, at 91. Adams also stated that he told S.H. that "she was becoming a big girl" as he rubbed her breasts and warned her "not to tell anyone because he would get in trouble." *Id.* at 91-92. Edgar testified that Adams stated he had touched S.H.'s breasts "one, two, possibly three times." *Id.* at 92.

Similarly, Trooper Shellenberger, who was both the lead investigator and the affiant in this case, testified that he read Adams his *Miranda*[2] warnings prior to interviewing him. Trooper Shellenberger testified that Adams admitted to having touched S.H.'s bare breasts, underneath her bra, approximately three times, and also admitted to having squeezed them. *Id.* at 111-12. Trooper Shellenberger further testified that Adams stated that "he had touched [S.H.'s vaginal area] at least two times . . . and that while touching her, on one occasion at least, he [made] a rubbing motion over [the] top of her vagina." *Id.* Trooper Shellenberger also testified that Adams stated that he told S.H. not to tell anyone "because he knew he would get in trouble for it." *Id.*

In light of the foregoing testimony, the brief sentence fragment uttered by Edgar, which was not intentionally elicited by the Commonwealth, could not reasonably be deemed to have changed the outcome of Adams' trial. *Strickland*, *supra*. Moreover, trial counsel lodged a timely objection, and

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the Commonwealth did not pursue the matter or refer to that portion of Edgar's testimony during its closing argument. *See Commonwealth v. Busanet*, 817 A.2d 1060, 1068 (Pa. 2002) (prejudice not established where counsel unnecessarily made jury aware of defendant's prior assault conviction, because Commonwealth presented substantial independent inculpatory evidence at trial and reference to assault conviction was "isolated and not exploited" by Commonwealth).

Accordingly, the PCRA court abused its discretion in granting Adams a new trial on the basis of trial counsel's failure to request a mistrial. Adams' judgment of sentence, imposed on December 5, 2019, is reinstated.

Order reversed. Judgment of sentence reinstated.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2023