J-A18008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CATHERINE STANSLAW | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIEL BARKMAN | : | |
| | : | |
| Appellant | : | No. 1228 WDA 2023 |

Appeal from the Order Entered September 21, 2023
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2023-02406

BEFORE:  OLSON, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:          **FILED: September 16, 2024**

Appellant, Kiel Barkman, appeals from a final order entered under the Protection From Abuse Act (PFA), 23 Pa.C.S.A. §§ 6101-6122, on September 21, 2023.  The challenged order granted Catherine Stanslaw (Stanslaw) protection from Appellant for a period of three years.  Upon careful consideration, we vacate the order.

We briefly summarize the facts and procedural history as gleaned from the certified record.  On August 29, 2023, Stanslaw petitioned for a PFA order against Appellant on her behalf and on behalf of the parties' three minor children.  The trial court granted a temporary PFA order for Stanslaw and the children.  On September 21, 2023, the trial court held a hearing.  At the hearing, Appellant, Stanslaw, and another witness, James Feather (Feather), testified.

Feather testified that within the two months preceding the hearing, Appellant "was in a state of distress, had [suffered] a physical injury [from] an accident, and [was] just really stressed out from not being able to see his kids and just [] having a hard time[.]" N.T., 9/21/2023, at 3-4. Feather further testified that he "sensed [Appellant] was close to having a bit of a breakdown and just wanted to forward that message on" to Stanslaw. *Id.* at 3; *see also id.* ("[I]t seemed like he was very depressed and [experiencing a] borderline mental breakdown [] from all of the stress of not having his kids and also the physical injury on top of that."). As a result, Feather forwarded his message to Stanslaw through "[a] mutual friend," Richard Crozam (Crozam) who "mentioned he still talked to" Stanslaw.[1] *Id.* at 3. Feather testified that he acted for "informational purposes [for Stanslaw] to be aware that [Appellant] was having a really rough time." *Id.* at 4. However, Feather admitted that he "hadn't seen [Appellant] in person at all during that time." *Id*. at 5. Feather did not tell Crozam that Appellant threatened to hurt Stanslaw or their children, Feather did not know what message Crozam actually delivered to Stanslaw, and Feather confirmed that his exchanges with Crozam occurred *via* text messages. *Id.* at 7. Moreover, Feather testified that, at the time of the hearing, he did not get the impression that Appellant was still suffering from a mental breakdown, and he believed that Appellant's

---

[1] Crozam did not testify at the PFA hearing. Stanslaw was prohibited from testifying about the substance of her conversation with Crozam because it constituted hearsay. *See* N.T., 9/21/2023, at 10.

actions were limited to "a seven day span or so" and that Feather may have overreacted because "nothing materialized[.]" *Id.* at 7-8.

Stanslaw testified as follows. Stanslaw testified that she had already been granted a one-year PFA order against Appellant from February 2021 through January 2022. *Id.* at 15. Stanslaw testified that the prior PFA order was granted because of past physical altercations. *Id.* at 14. However, Stanslaw admitted that there were no violations of the prior PFA order, Appellant had not contacted her since the earlier PFA expired, and she had only seen Appellant in public twice at "music festivals" over a year before the instant hearing. *Id.* at 15-16 and 20; *see also id.* at 18 ("While I did see him twice in public twice [since the last PFA order], he followed me at a music festival with hundreds of people and he made eye contact with me and[,] while we were standing there with hundreds of people around, he was right behind me."). Instead, Stanslaw questioned Appellant's sobriety and "where he stands mentally[.]" *Id.* at 16-17; *see also id.* at 20 ("Just last May, [Appellant] posted on social media to a public forum making no sense, asking to come and fight [Stanslaw's] husband and there's just several incidences where he just isn't making sense at all. Him refusing to ever take a drug test for the Court. There's just a lot of red flags."). She testified that Appellant was briefly hospitalized for his mental health in 2019. *Id.* at 17-18. Stanslaw stated that, at the time of the hearing, Appellant had begun making telephone calls to the children, but "they do not want to speak to him." *Id.* at 19.

Appellant testified that he did not make threats of harm to Stanslaw or their children. *Id.* at 24; *see also id.* at 27 ("There [were] no threats[.] I've never touched her. I've never assaulted anyone."). He confirmed Feather's characterization that he was depressed two months before Stanslaw filed for a temporary PFA order in this matter. *Id.* at 24. Appellant claimed that, at the time, he "hadn't spoken to [his] kids in two years [and when] he finally got a phone call and was excited to talk to all three and[, his] oldest daughter said I hate you, I don't want to talk to you, and just hung up on" him. *Id.* Appellant testified such actions were "pretty crushing after two years." *Id.*; *see also id.* at 29 ("I miss my dog. I miss my kids. That's all I want, just a healthy coparenting relationship where I can see my kids."). Appellant also testified that he never asked Feather to relay any messages to Stanslaw. *Id.* at 25. Appellant began drug rehabilitation treatment and counseling in 2020 and testified that he has been sober ever since. *Id.* at 29.

At the conclusion of the PFA hearing, and in a subsequent order entered on September 21, 2023, the trial court granted a final PFA order for "Stanslaw only" for a period of three years. *Id.* at 31. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

1. Did the trial court err and/or abuse its discretion by determining that [] Appellant had abused [Stanslaw] by placing her in reasonable fear of imminent serious bodily injury?

---

[2] On October 10, 2023, Appellant filed a notice of appeal. On December 28, 2023, the trial court sent this Court a letter advising that it would rely upon the record for its decision and that no opinion pursuant to Pa.R.A.P. 1925(a) would be forthcoming.

- 4 -

2. Did the trial court err and/or abuse its discretion by determining [] Appellant had abused [Stanslaw] by knowingly engaging in a course of conduct or repeatedly committing acts towards her, including following [her], without proper authority, under circumstances which place the person in reasonable fear of bodily injury?

Appellant's Brief at 8.

Appellant's issues are inter-related and we will address them together. Appellant claims that the evidence presented at trial was insufficient to sustain a final PFA order against him pursuant to the only two applicable subsections of the PFA Act. Appellant claims that there was no evidence that he placed Stanslaw in reasonable fear of imminent serious bodily injury pursuant to 23 Pa.C.S.A. § 6102(a)(2) or that he knowingly engaged in a course of conduct which placed her in reasonable fear of bodily injury pursuant to 23 Pa.C.S.A. § 6102(a)(5). *Id.* at 13-17. More specifically, Appellant claims that he did not "place" Stanslaw in fear and, instead, "did not do anything other than confide in a friend that he was struggling" and that Feather "decided to contact" Stanslaw on his own. *Id.* at 20. As such, Appellant suggests that he did not engage in a volitional act directed toward Stanslaw. *Id.* at 20-21. Next, Appellant argues that he has not contacted Stanslaw directly since 2021, has only seen her "twice outside of court since then" and she "is not in a position to make an assessment of [his] mental condition or his drug use." *Id.* at 23. As such, Appellant asserts that "[t]he [c]ourt cannot grant a PFA [order] to a person who knows someone with a mental health or drug addiction issue because of that issue alone, the person must have done something

- 5 -

more." ***Id.*** at 24. Appellant recognizes that "the facts surrounding [the] previous PFA [order] are relevant to a determination of the reasonableness of fear in the current petition" but suggests that he should not be punished for past behavior where he has not contacted Stanslaw in two-and-one-half years and never violated the previous PFA order. ***Id.*** at 25. Appellant argues that there was no evidence of an imminent threat of serious bodily injury when the parties saw each other at a music festival because Stanslaw did not immediately file a petition for a PFA after that incident. ***Id.*** at 26-27. Regarding a course of conduct, Appellant claims that the one incident at the music festival was insufficient to support the issuance of a PFA order under 23 Pa.C.S.A. § 6102(a)(5). ***Id.*** at 29-31.

We adhere to the following standards:

Our standard of review for PFA orders is well settled. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion.

The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly.

When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

\*\*\*

- 6 -

The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse. In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury. Past acts are significant in determining the reasonableness of a PFA petitioner's fear.

*E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (internal citations, quotations, and brackets omitted).

Pertinent to this appeal, the PFA defines "abuse" as follows:

**"Abuse."** The occurrence of one or more of the following acts between [] persons who share biological parenthood:

\*\*\*

(2) Placing another in reasonable fear of imminent serious bodily injury.

\*\*\*

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a)(2) and (5). "Terms not defined in [the PFA Act] shall have the meaning given to them" in the Crimes Code. *See* 23 Pa.C.S.A. § 6102(b).

Regarding a course of conduct, we have previously stated:

"Course of conduct" is defined in multiple instances [] in the Crimes Code and, in each of those instances, "course of conduct" implies more than one act over time. *See* 18 Pa.C.S.A. § 2709(f) (defining "[c]ourse of conduct" as used in the statute defining the

offense of harassment as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct"); 18 Pa.C.S.A. § 2709.1(f) (defining "[c]ourse of conduct" as used in the stalking statute as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct"). Although recognizing that the harassment and stalking statutes provide a statutory definition for the phrase, this Court has "explained that '[c]ourse of conduct by its very nature requires a showing of a repetitive pattern of behavior.'" *Commonwealth v. Leach*, 729 A.2d 608, 611 (Pa. Super. 1999) (*quoting* *Commonwealth v. Urrutia*, 653 A.2d 706, 710 (Pa. Super. 1995)).

*Commonwealth v. Kelly*, 102 A.3d 1025, 1030–1031 (Pa. Super. 2014).

Here, in viewing the evidence in the light most favorable to Stanslaw as required, we conclude that there was insufficient evidence to find that she was in reasonable fear of imminent serious bodily injury pursuant to 23 Pa.C.S.A. § 6102(a)(2) or that Appellant engaged in a course of conduct under 23 Pa.C.S.A. § 6102(a)(5). As detailed above, the only basis for the current PFA order was that Stanslaw believed that Appellant had drug and mental health problems and that he followed her one time at a public event. It was permissible for the trial court to rely, in part, upon testimony regarding past acts in determining the reasonableness of Stanslaw's fear. However, in light of undisputed evidence that Appellant had not threatened or contacted Stanslaw since the prior PFA order was instituted in 2021, there was insufficient evidence that her fear was reasonable in this case. Moreover, while Feather told Crozam to tell Stanslaw that Appellant was suffering from mental health issues for a short duration, there is no evidence that the statements (or chain of communications) were originated by Appellant in order

to place Stanslaw in fear of her safety. Appellant expressed disappointment to Feather about not speaking to his children. Feather then took it upon himself to relay a message to Stanslaw that Appellant's mental health was suffering because he had not seen or spoken to his children. There is no evidence or testimony to suggest that Appellant threatened harm to Stanslaw at any time. Accordingly, we conclude that it was not reasonable for Stanslaw to fear Appellant would cause her bodily injury based on second-hand observations of Appellant's general mental state.

Additionally, there was no evidence of a course of conduct. Appellant expressed his mental struggle to Feather on a single occasion. Likewise, there was only evidence regarding a single instance where the parties saw each other in public at a music festival.[3] The parties were in close proximity and made eye contact, but Appellant did not speak to Stanslaw and when she moved away, there is no evidence that he followed.[4] As such, there was no evidence that Appellant engaged in a course of conduct under the PFA Act.

---

[3] Although Stanslaw testified that there was another time she saw Appellant in public, there was no further testimony regarding this second alleged event.

[4] There was no testimony regarding the exact date of the music festival. Stanslaw merely testified that it occurred after the prior PFA expired in 2022, but before she petitioned for a new PFA in August 2023. N.T., 9/21/2023, at 18. Accordingly, there was simply no evidence that Stanslaw's fear was imminent. "To be imminent, the danger must be, or must reasonably appear to be, threatening to occur immediately, near at hand, and impending." **Commonwealth v. Capitolo**, 498 A.2d 806, 809 (Pa. 1985); **see also** Black's Law Dictionary 898 (11th ed. 2019) (defining "imminent" as "(of a danger or calamity) threatening to occur immediately; dangerously impeding" and/or "about to take place.").

Accordingly, for all of the foregoing reasons, we discern that the trial court erred in granting a final PFA order in this matter. As such, we reverse the trial court's decision and vacate the PFA order issued on September 21, 2023.

Order reversed and vacated.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/16/2024