J-S39036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CELESTIN JULES | : | |
| | : | |
| Appellant | : | No. 656 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 21, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004101-2021

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: DECEMBER 18, 2023**

Celestin Jules (Appellant) appeals from the judgment of sentence entered in the Berks County Court of Common Pleas, following his non-jury conviction of one count of endangering the welfare of children (EWOC).[1] Contemporaneous with this appeal, Appellant's counsel, William C. Bispels, Esquire, has filed a petition to withdraw from representation and an ***Anders*** brief. ***See Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). The ***Anders*** brief presents challenges to the sufficiency and weight of the evidence supporting Appellant's conviction. In addition, Appellant submitted a *pro se* answer and supplemental response to the ***Anders*** brief raising additional claims. Based on the following, we affirm.

---

[1] 18 Pa.C.S. § 4304(a)(1).

On October 6, 2021, Appellant was charged with one count of EWOC in connection with the care of his 10-year-old son. The case proceeded to a bench trial on March 7, 2023, during which Appellant was represented by Corey S. Chwiecko, Esquire.

The trial court summarized the relevant testimony as follows:

Deneida Perez testified that she is a case manager for Signature Family Services, which is a contract provider for Berks County Children and Youth Services.  Ms. Perez testified that she worked with . . . Appellant and his son, [S.J.], for two to three months. Ms. Perez testified that [S.J.] required services because he is nonverbal and was diagnosed with autism and ADHD.  On July 28, 2021, when [S.J.] was ten years old, Ms. Perez had a visit scheduled with [S.J.] and was supposed to also meet with . . . Appellant.  However, . . . Appellant called her and said that he would not be coming.

Ms. Perez testified that she went to an apartment located in the 600 block of North Fifth Street in the City of Reading to see [S.J.] and meet with [S.J.]'s caregiver, who was named Patrick. When Ms. Perez arrived, she observed that Patrick was sitting outside on a step.  Ms. Perez identified herself and asked to see [S.J.].   Patrick led Ms. Perez to a room that had what she described as a barricade blocking the door.

After Patrick moved a chair, a table, two doors, and a stove out of the way, Ms. Perez was able to enter [S.J.]'s room.  Ms. Perez observed what she described as a disheveled bed on the floor and a door that was blocking most of the window to the room. [S.J.] was wearing a t-shirt and nothing from the waist down.  Ms. Perez testified that she observed staining in the room and that there was the smell of urine.  Ms. Perez did not see any toys, books, or food in the bedroom.  Photographs of the apartment were admitted into evidence as Commonwealth's Exhibits 1-18.

Ms. Perez told Patrick that it was not appropriate to have the items blocking the door to the room and testified that Patrick agreed.  Because [S.J.] was not toilet trained, Ms. Perez made sure that he had a dry diaper as well as a snack and a drink before she left.   After leaving the apartment and speaking to her

supervisor Ms. Perez returned and asked to see [S.J.] again. After Patrick led Ms. Perez back in, she observed that the barricade was up again.

Ms. Perez testified that she then spoke to . . . Appellant and informed him of the situation with the barricade. Ms. Perez testified that . . . Appellant, whom she described as irate, said that he told Patrick to do that. Ms. Perez testified that . . . Appellant did not give her any more information about Patrick and said that . . . Appellant made no attempt to see his son after she spoke to him. Ms. Perez subsequently removed [S.J.] from the residence and took him to LIFE House in Reading, which is an after-hours facility for Berks County Children and Youth Services.

On cross-examination, Ms. Perez testified that the entire time she was working as [S.J.]'s caseworker, she was aware that . . . Appellant lived in Lititz with his wife and other children, while [S.J.] lived in the apartment in Reading with a caretaker. However, Ms. Perez further testified that she met with . . . Appellant at the apartment in Reading and that . . . Appellant was aware of the physical condition of the apartment and the bedroom of the child.

In addition, Ashley Frey, an emergency duty caseworker for Berks County Children and Youth Services, testified that she spoke to . . . Appellant on the phone the day [S.J.] was removed from the apartment and that . . . Appellant was unwilling to come to Reading or send a different caregiver. . . . Appellant indicated that he was content with the care that [S.J.] was receiving from Patrick and stated that Patrick was caring for the child pursuant to his instructions. . . . Appellant stated that if [S.J.] were a different child, barricading him in the room would not be appropriate. However, because he has special needs, barricading him in the room is necessary. When Ms. Frey tried to discuss why barricading the child in the room was inappropriate, . . . Appellant replied, "Says you."

Finally, Criminal Investigator (hereinafter "C.I.") Christopher Santoro of the Reading Police Department testified that as part of his investigation, he executed a search warrant at 631 North Fifth Street, Apartment 1F, in the City of Reading. C.I. Santoro took photographs of the apartment and testified that the child's bedroom smelled of urine and feces and that there appeared to be dried feces on the walls. C.I. Santoro spoke to . . . Appellant about the conditions in which the child had been living and

> testified that . . . Appellant was aware that the child had been barricaded in the room. . . . Appellant said that he instructed Patrick to do that and said that it was for the child's own good. When C.I. Santoro commented that he would not have treated his dog in that fashion, . . . Appellant responded, "That is you."

Trial Ct. Op., 6/22/23, at 3-6 (record citations omitted).

C.I. Santoro also testified that, as part of his investigation, he reviewed the notes of testimony from S.J.'s dependency hearing, which was conducted on August 4, 2021. *See* N.T. Trial, 3/7/23, at 72-73. The transcript from the dependency hearing was marked as evidence and admitted at trial. Appellant did not testify on his own behalf or present any evidence.

At the conclusion of trial, the court found Appellant guilty of EWOC. On April 21, 2023, the trial court sentenced Appellant to a term of 11 1/2 to 23 months' incarceration, followed by five years of probation. Appellant did not file a post-sentence motion. Instead, on April 28, 2023, Appellant filed a *pro se* notice of appeal. Shortly thereafter, the trial court granted Attorney Chwiecko's request to withdraw because Attorney Bispels had entered his appearance.[2]

When, as here, counsel filed a petition to withdraw and accompanying **Anders** brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. **Commonwealth**

---

[2] Attorney Bispels complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

*v. Bennett*, 124 A.3d 327, 330 (Pa. Super. 2015). An attorney seeking to withdraw from representation on appeal must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; ) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Pursuant to *Santiago*, counsel must also:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous, and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.*, *quoting* *Santiago*, 978 A.2d at 361.

In the present case, the brief and motion to withdraw filed by Attorney Bispels substantially comply with the requirements of *Anders* and *Santiago*. *See Cartrette*, 83 A.3d at 1032. However, we point out that counsel's motion to withdraw and letter to Appellant state the appeal is meritless, rather than frivolous. *See* Motion to Withdraw as Counsel, 8/22/23; *see also* Attorney Bispels' Letter to Appellant, 8/22/23. We remind counsel that the correct standard required to withdraw from representing a client on direct appeal is a determination that the appeal is **frivolous.** *See Cartrette*, 83 A.3d at 1032; *Santiago*, 978 A.2d at 361. The two terms are not synonymous. *See*

*Commonwealth v. Hipps*, 274 A.3d 1263, 1271 n.3 (Pa. Super. 2022) ("Frivolousness and meritless are distinct concepts. [F]rivolous is a slightly higher standard than lack of merit; an argument may be meritless, but not frivolous.") (citations & quotation marks omitted), *appeal denied*, 288 A.3d 1292 (Pa. 2022); *Commonwealth v. Smith*, 700 A.2d 1301, 1305 n.10 (Pa. Super. 1997) ("[A]n appeal is frivolous where it lacks any basis in law or fact.") (citation & quotation marks omitted).

Nevertheless, while Attorney Bispels used the term meritless in his motion and letter to Appellant, he concludes in the *Anders* brief that there are "no non-frivolous argument[s]" to support Appellant's appeal. *See Anders* Brief at 19. Thus, we conclude Attorney Bispels' motion to withdraw and *Anders* brief substantially meet the requirements of *Anders* and *Santiago*. Further, Attorney Bispels has provided this Court with a copy of the letter he sent to Appellant, advising him of his right to proceed with newly retained counsel or *pro se*, and to raise any additional points for this Court's attention. *See* Attorney Bispels' Letter to Appellant, 8/22/23. Thereafter, Appellant filed both a response and supplemental response raising additional claims which we will discuss *infra*.

Thus, we proceed to address the substantive claims presented in the *Anders* brief, as well as Appellant's *pro se* responses, and then conduct a "full examination of all the proceedings, to decide whether the case is wholly frivolous." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1196 (Pa. Super. 2018) (*en banc*) (citation & emphases omitted). If we agree with Attorney

- 6 -

Bispels' assessment, "[we] may grant his request to withdraw and dismiss the appeal[.]" *Id.* (citation omitted).

As mentioned above, the *Anders* brief presents two substantive issues for our review:

> 1. Whether the evidence at trial was sufficient to support a verdict of guilty of [EWOC?]
>
> 2. Whether the verdict of guilty of [EWOC] was contrary to the weight of the evidence[?]

*Anders* Brief at 7 (some capitalization omitted).

The first issue on appeal challenges the sufficiency of the evidence supporting Appellant's EWOC conviction. *See Anders* Brief at 16. We begin with our well-settled standard of review:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute out judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a

defendant's crimes beyond a reasonable doubt, the . . . convictions will be upheld.

***Commonwealth v. Windslowe***, 158 A.3d 698, 708-09 (Pa. Super. 2017) (citation omitted).

The crime of EWOC is defined, in relevant part, as follows: "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1).

Therefore, to establish a violation of Section 4304, the Commonwealth must demonstrate the following:

1) the accused is aware of his/her duty to protect the child;

2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and

3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

If the Commonwealth fails to prove any one of these elements, there is insufficient evidence to sustain a conviction for child endangerment.

***Commonwealth v. Pahel***, 689 A.2d 963, 964 (Pa. Super. 1997) (citation omitted).

Moreover:

The "knowing" element of the crime applies to the general issue of whether the defendant knew that he was endangering the child's welfare, not whether the defendant knew that he would cause any particular result.

*Commonwealth v. Smith*, 956 A.2d 1029, 1038 (Pa. Super. 2008) (*en banc*).

We also emphasize our commentary in *Commonwealth v. Taylor*, 471 A.2d 1228 (Pa. Super. 1984), regarding the legislature's intent in enacting Section 4304:

> The Supreme Court has said that Section 4304 was **drawn broadly to cover a wide range of conduct in order to safeguard the welfare and security of children. It is to be given meaning by reference to the common sense of the community and the broad protective purposes for which it was enacted.** Thus, the common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.

*Id.* at 1231 (emphasis added; citations & quotation marks omitted).

Appellant contends that the conditions in which his child, S.J., was found were necessary and acceptable for S.J.'s protection. *See Anders* Brief at 16. Moreover, in his *pro se* response to the *Anders* brief, Appellant insists that the Commonwealth failed to establish the knowing element of EWOC because "the caretaker [watching S.J.] went way over what [A]ppellant instructed him to do, [which was only] to place a gate in front of SJ's door . . . when [the caretaker had] to take a shower or bath" so that S.J. was not left unattended. *See* Appellant's *pro se* Answer to *Anders*, 9/19/23, at 7. He further asserts that the "Commonwealth did not establish [he] was aware [that] the nature of his conduct certainly will cause such result[.]" *See id.* at 8.

Appellant also argues the Commonwealth failed to establish the supervising element of the crime because Patrick "was the one supervising [S.J.] while [A]ppellant [was] at work." **See** Appellant's *pro se* Answer to **Anders** at 8. Lastly, Appellant asserts that the Commonwealth never presented expert testimony to support its claims. **See id.**

We agree with the trial court's determination that the "facts, taken together, were sufficient for [the] court as fact-finder to find Appellant guilty of" EWOC. Trial Ct. Op. at 6.

First, Appellant was aware of his duty to protect his son. **See Pahel**, 689 A.2d at 964. During the dependency hearing,[3] Appellant confirmed that he had been S.J.'s primary caretaker for the seven months prior to the incident at issue, while S.J.'s biological mother, with whom the child generally resided, was hospitalized.[4] **See** N.T. Dependency H'rg, 8/4/21, at 27-28.

Second, Appellant was aware that S.J. was in circumstances that could threaten his physical or psychological welfare. **See Pahel**, 689 A.2d at 964. By his own admission, Appellant was not only aware that the caretaker, Patrick, barricaded S.J. in his bedroom, Appellant had instructed him to do so. **See** N.T., Trial, at 44, 56, 70-71. Further, the conditions of the room in which

_____

[3] The transcript from the dependency hearing was marked and admitted as Commonwealth Exhibit 19 at Appellant's trial. **See** N.T., Trial, at 5, 80.

[4] Appellant and S.J.'s mother were not together, and he explained that his "actual wife doesn't want to deal with" S.J. **See** N.T., Dependency H'rg, at 26.

- 10 -

S.J. resided were unsanitary, if not deplorable. The child slept on a "heavily" stained and soiled mattress and box spring, with no sheets, and only a blanket. *See id.* at 46. The room was dirty and smelled "strongly of human feces and urine." *Id.* at 45. The only window was "completed boarded over" so there was no "airflow" and, in July, the room was "extremely warm." *Id.* at 46. Moreover, when Case Manager Perez first entered S.J.'s room, S.J. was wearing "just a T-shirt and nothing from the waist down." *Id.* at 15.

C.I. Santoro testified that when he "confronted [Appellant] with the conditions of the home and the barricading[,]" Appellant admitted he knew of "those conditions" and was "the one who actually directed the caretaker [how] to care" for S.J. N.T., Trial, at 75-76. Further, Case Manager Perez testified that Appellant was aware of the "physical conditions of the home and the bedroom of the child[,]" because he was present during prior visits when they discussed those conditions. *Id.* at 37, 39. She explained that although her team considered consulting with "other agencies[, Appellant] did not want to put any services in place for assistance that he had to be in the home for." *Id.* at 40.

Third, Appellant failed to act to protect S.J.'s welfare. *See Pahel*, 689 A.2d at 964. As explained above, Appellant was aware of the deplorable conditions in the home where his child was residing, and, in fact, directed

S.J.'s caretaker to barricade him in the room.[5]  **See** N.T., Trial, at 44, 56, 70-71.  Emergency Duty Caseworker Frey testified that when she spoke with Appellant after taking custody of S.J., she "addressed with him the concerns and the conditions of the home." **Id.** at 56.  She noted "[h]e did not seem surprised by any of it at all[, except] he denie[d] that [S.J.] would be left without food or water." **Id.**  Further, as noted above, Case Manager Perez testified that during previous visits, she and Appellant "discussed" the conditions of the home as "being problematic[,]" and Appellant "talked about cleaning it up." **Id.** at 40.  During the dependency hearing, Case Manager Perez explained that while she never observed a barricade in front of S.J.'s room during her prior visits, those visits were all **announced** — the visit on July 28, 2021, was **unannounced**.  **See** N.T., Trial, at 10; N.T., Dependency H'rg, at 15.

As for Appellant's claim that the Commonwealth failed to provide expert testimony, such testimony is not required.  The crime of EWOC does not require proof that the child suffered a definitive injury.  Rather, the Commonwealth must prove the defendant "knowingly endanger[ed] the welfare of the child[,]"[6] or, in other words, placed the child in circumstances

---

[5] With regard to Appellant's claim that he was unaware his conduct would "cause such result[,]" we reiterate that the Commonwealth is only required to prove Appellant "knew he was endangering the child's welfare, not whether [he] knew that he would cause any particular result." **See Smith**, 956 A.2d at 1038. **See also** Appellant's pro se Answer to **Anders**, 9/19/23, at 8.

[6] 18 Pa.C.S. § 4304(a)(1).

"that could threaten the child's physical or psychological welfare." **Pahel**, 689 A.2d at 964. Accordingly, the Commonwealth's failure to provide expert testimony is of no moment, and we conclude the Commonwealth presented sufficient evidence to support the trial court's verdict.

The second issue in the **Anders** brief challenges the weight of the evidence supporting Appellant's conviction. **See Anders** Brief at 18.

This Court's standard of review of a weight of the evidence claim is well-settled:

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

**Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted).

Here, the trial court found Appellant waived his weight claim. **See** Trial Ct. Op. at 7. We agree. Pennsylvania Rule of Procedure 607 dictates that a challenge to the weight of the evidence **must be raised** with the trial judge either:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim." Commonwealth v. Cox, 231 A.3d 1011, 1018 (Pa. Super. 2020). **See also** Pa.R.Crim.P. 607, Cmt. ("The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived."). Because Appellant did not advance a weight claim at sentencing or in a post-sentence motion, his challenge on appeal is waived for our review.

Next, we address three additional claims Appellant presented in his *pro se* answer and supplemental response to the **Anders** brief: (1) Appellant's trial and appellate counsel provided ineffective assistance; (2) the parental justification defense[7] excused his actions; and (3) the Commonwealth failed to demonstrate that he engaged in "a course of conduct" to support the grading of his offense as a third-degree felony. **See** Appellant's *pro se* Answer to **Anders** at 2-5, 9-10; Appellant's *pro se* Supplemental Response Regarding **Anders** Brief, 11/1/23, at 1-2 (unpaginated).

First, Appellant alleges that both trial counsel (Attorney Chwiecko) and appellate counsel (Attorney Bispels) rendered ineffective assistance. Specifically, he contends trial counsel was ineffective for failing to object to or challenge the sufficiency of the Commonwealth's evidence supporting his conviction and for failing to file a post-sentence motion, and faults appellate

---

[7] 18 Pa.C.S. § 509(1).

- 14 -

counsel for failing to request permission to file a post-sentence motion *nunc pro tunc* after entering his appearance. ***See*** Appellant's *pro se* Answer to ***Anders*** at 2-5, 10; Appellant's *pro se* Supplemental Response Regarding ***Anders*** Brief at 1-2 (unpaginated).

"[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." ***Commonwealth v. Grant***, 813 A.2d 726, 738 (Pa. 2002). Our Supreme Court has recognized three limited exceptions to the general rule: (1) in extraordinary circumstances where claims of trial counsel's ineffectiveness are "apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice;"[8] (2) where there is good cause shown and unitary review of the claim is preceded by a waiver of the right to seek review under the Post-Conviction Relief Act (PCRA);[9] and (3) "where the defendant is statutorily precluded from obtaining subsequent PCRA review[,]" such as, when a defendant receives a short sentence or a fine for their crimes.[10]

None of these exceptions apply to the facts before us. Appellant's claims are not apparent from the record and meritorious, Appellant has not waived his right to PCRA review, and the sentence imposed by the trial court does not statutorily prohibit him from seeking PCRA review. ***See Holmes***, 79 A.3d at

---

[8] ***See Commonwealth v. Holmes***, 79 A.3d 562, 563 (Pa. 2013).

[9] ***See Holmes***, 79 A.3d at 564; ***see also*** 42 Pa.C.S. §§ 9541-9545.

[10] ***See Commonwealth v. Delgros***, 183 A.3d 352, 361 (Pa. 2018).

563-64; **Delgros**, 193 A.3d at 361. **See also** 42 Pa.C.S. § 9543(a)(1)(i) (to be eligible for PCRA relief, the petitioner must "plead and prove by a preponderance of the evidence [they have] been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted . . . currently serving a sentence of imprisonment, probation or parole for the crime"). Accordingly, we decline to entertain the ineffectiveness claims on direct appeal and dismiss them without prejudice for Appellant to raise the claims on collateral review.

Next, we address Appellant's contention that his actions are excused by the parental justification affirmative defense "because [S.J.] used to escape several times over the years and [Appellant] acted to safeguard [him]." **See** Appellant's *pro se* Answer to **Anders** at 9–10.

The parental justification defense may be raised to excuse "conduct that is otherwise criminal, but which under the circumstances is socially acceptable and which deserves neither criminal liability nor even censure.'" **Commonwealth v. Yachimowski**, 232 A.3d 861, 866 (Pa. Super. 2020) (emphasis & citations omitted). As set forth in the Crimes Code, the parental justification defense requires proof of the following elements:

> 1) the actor use[d] "force upon or toward the person of another;" 2) the actor "is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person;" 3) "the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct;" and, 4) "the force used is not designed to cause or known to create a substantial risk

of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation."

*Id.*, *citing* 18 Pa.C.S. § 509(1).

Here, Appellant's claim that his decision to barricade S.J. in his room was necessary "to safeguard" the child because he had escaped from the home "several times over the years" does not support the parental justification affirmative defense. **See** Appellant's *pro se* Answer to **Anders** at 9-10. S.J. was not simply locked in his room to prevent him from escaping. Rather, the testimony established that he was barricaded in the room — his doorway was blocked by a stove, a table, a chair, two additional doors, and a plank. **See** N.T., Trial, at 13. Moreover, the condition of the room was filthy, and the only window was "completely boarded over" so that no light or airflow could come through. **See id.** at 45-46. When confronted with the unsafe conditions, Appellant exhibited no concern for his child. Instead, he was "irate" and "blam[ed the caseworkers] for the situation." **Id.** at 22. Appellant "was not willing to come to [the home] or send a different caregiver." **Id.** at 44. It is evident that S.J.'s living conditions, particularly the fact he was barricaded in his bedroom, created a "substantial risk" of "mental distress or gross degradation." **See Yachimowski**, 232 A.3d at 866. **Compare id.** at 863-64 (father was entitled to parental justification jury instruction when evidence established parents confined five-year old to her room using baby gates screwed into wall so that child did not roam house unattended in middle of the night, but that home was "not in disarray[,]" there was a "potty chair" and

wipes in child's room, and parents removed gates when confronted with fire safety concern).

Lastly, Appellant challenges the grading of his conviction as a third-degree felony. *See* Appellant's *pro se* Answer to **Anders** at 9. The offense of EWOC is generally graded as a first-degree misdemeanor. *See* 18 Pa.C.S. § 4304(b)(i). However, if "the actor engaged in a **course of conduct** of endangering the welfare of a child[,]" the offense may be graded as a third-degree felony. *See* 18 Pa.C.S. § 4304(b)(ii) (emphasis added). "Although the EWOC statute does not define 'course of conduct,' the phrase is clearly used in that context to differentiate the penalties for single and multiple endangering acts." *Commonwealth v. Kelly*, 102 A.3d 1025, 1031 (Pa. Super. 2014) (*en banc*).

In support of his claim, Appellant argues that "[e]ven [Case Manager Perez] stated that [the date of the incident] was the **first time** she saw such thing[s]" since she started working with them four months prior. *See* Appellant's *pro se* Answer to Anders at 9 (emphasis added).

We find this argument without merit. Here, it was evident that Appellant "engaged in a course of conduct" consisting of "multiple endangering acts" over an extended period. *See Kelly*, 102 A.3d at 1031. While Case Manager Perez acknowledged that the first time she observed S.J.'s door barricaded was during her visit on July 28, 2021, she also explained that was her first **unannounced** visit. *See* N.T., Dependency H'rg, at 15. However, as noted above, she also testified that during prior visits, she and Appellant "discussed"

the conditions of the home as "being problematic[,]" and Appellant "talked about cleaning it up." N.T., Trial, at 40. **See also** N.T., Dependency H'rg, at 15 (Case Manager Perez stating "I was always concerned of the quality of the home and [S.J.'s] quality of life"). However, Appellant was unwilling "to put any services in place for assistance that he had to be in the home for." **See** N.T., Trial, at 40. Thus, we conclude the Commonwealth presented sufficient evidence for the trial court to determine Appellant engaged in a "course of conduct" of endangering the welfare of his child to support the grading of the offense as a third-degree felony.[11] **See Commonwealth v. Barkman**, 295 A.3d 721, 735-36 (Pa. Super. 2023) (determining "confluence of circumstances strongly suggested an ongoing pattern of neglect, not merely a momentary state of affairs[,]" to support grading of EWOC as third-degree felony when if it could be "reasonably inferred" that "unsanitary and deplorable conditions" in home "developed over a period of days, weeks or months").

Consequently, we agree with Attorney Bispels' determination that the appeal is frivolous, and the *pro se* claims raised by Appellant warrant no relief. Moreover, our independent review of the record reveals no non-frivolous issues to be raised on appeal. **See Yorgey**, 188 A.3d at 1196. Therefore, we

---

[11] We note, too, that Appellant was charged with the crime as a third-degree felony, and the Commonwealth explicitly argued that Appellant engaged in a "course of conduct" in its closing before the court entered its verdict. **See** Criminal Information, 12/16/21; N.T., Trial, at 83-84.

affirm the judgment of sentence and grant Attorney Bispels' petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2023