J-A17035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
J.A.B. :
:
Appellant : No. 1190 WDA 2024

Appeal from the Judgment of Sentence Entered April 9, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005368-2021

BEFORE: McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: September 19, 2025**

Appellant, J.A.B.,[1] timely appeals from the judgment of sentence imposed following his convictions for multiple counts of sexual assault related to incidents involving his child that had occurred over a period of years. After careful review, we affirm Appellant's convictions but remand for a new sentencing hearing.

The victim in this case, O.B., is the oldest of three children born to Appellant and L.D. (hereinafter, Mother).[2] O.B. has two younger brothers,

---

[1] We have redacted Appellant's name in the caption and instead identify him by his initials. Throughout this memorandum, initials are used for most individuals to protect the identity of the victim involved.

[2] O.B. was born female and began identifying as a male at around the age of 14. The trial court explained that, at the time of trial, O.B. was continuing to transition through the use of hormone therapy. Trial Court Opinion (TCO), 12/7/24, at 4.

who are both severely autistic, non-verbal, and require around-the-clock care. As Mother was the primary breadwinner in the family, the majority of care for the younger boys was performed each day by Appellant. The trial court set forth the facts of this case in the opinion filed on December 7, 2024 as follows, in pertinent part:

> In September of 2020, O.B. was twenty (20) years old and living at the family home when he surreptitiously recorded a video of Appellant in the living room with his brothers. O.B. believed that Appellant was engaging in inappropriate behavior in front of his brothers, so he recorded Appellant.[3] He also reported his concerns to his therapist, who, as a mandated reporter, notified law enforcement. In the wake of O.B.'s reports, Appellant and [Mother] locked him out of the house. When no action was taken on behalf of his brothers, O.B. disclosed that Appellant had inappropriately touched him starting when he was eleven (11) years old.
>
> A report was generated from Children Youth and Family (CYF) related to the reporting from O.B.'s therapist. Thereafter, Ross Township Police Detective Michael Kirtley became involved in what he described as a two-part investigation of Appellant. One part concern[ed] the [two younger] boys, and the second part involved allegations of abuse against O.B. After reviewing the CYF investigation report and the video footage taken by O.B., the first part of the investigation was closed as unfounded. Thereafter, Detective Kirtley investigated the allegations that Appellant sexually abused O.B.
>
> When O.B. was eleven (11)[,] … Appellant entered his room and asked if he knew how to masturbate. O.B. did not understand what Appellant was asking and stated he did not. Appellant showed O.B. how to place lubricant on his fingers and directed O.B. to put his hand down his pants. Appellant then pulled O.B.

---

[3] Apparently, O.B. believed that he observed Appellant's teaching the young boys how to masturbate. N.T. Jury Trial, 12/7/23-12/11/23, at 78 ("[H]e was teaching my brother how to masturbate. He was doing the same thing to me whenever I was his age.").

towards him and put his hand over O.B.'s hand and began touching his clitoris. O.B. recalled that his mother was at work and his brothers, who were four (4) and two (2) at the time, were in another room. O.B. told his mother when she came home from work, but nothing happened.

When he was thirteen (13), O.B. recalled an evening when he and Appellant stayed up late talking. His mother was asleep in the attic bedroom and his siblings were in the living room. O.B. recalled that Appellant was taking shots of Jack Daniels and that the two (2) of them were getting along, which he explained was unusual. At some point O.B. hugged Appellant goodnight and Appellant began rubbing his back, chest, and buttock[s]. O.B. went to bed and[,] shortly after[,] Appellant entered his bedroom. Appellant proceeded to get under the covers with O.B. and then put his hand down O.B.'s pants and began rubbing his clitoris. While this was occurring, [Mother] came down from the attic. O.B. called for his mother and when [Mother] opened the door, Appellant was still under the covers but had removed his hands from O.B.'s pants. [Mother] questioned what Appellant was doing and told him to go to the attic. O.B. again told his mother that Appellant touched him. [Mother] later woke O.B. and told him they were going to [J.M.]'s house. [J.M.] is Appellant's sister.

They stayed there for a few days and O.B. was questioned by multiple family members about what happened. At some point during the stay, Appellant apologized to O.B., explaining that he didn't remember anything, but if he did anything he was sorry. O.B. testified that staying at [J.M.]'s house was difficult because his mother was crying all the time and his brothers were sad and upset. He explained that this caused him to recant to both [J.M.] and [Mother]. [J.M.], who had initially showed concern, reacted by screaming at O.B. and calling him a liar. Eventually O.B., his brothers, and [Mother] returned to the Ross Township family home.

When O.B. was fifteen (15)[,] he recalled another incident with Appellant. Appellant entered O.B.'s room and started petting the family cat and told O.B. he could make him feel good[,] too[,] and attempted to touch his thigh. O.B. slapped Appellant's hand away and yelled for his mother. It was at this age that O.B. disclosed the abuse to his friend … and his [friend's] mother….

TCO at 4-7.

Mother also testified at Appellant's trial. N.T. Jury Trial at 130-98. The Commonwealth also called three witnesses to whom O.B. had disclosed the abuse: O.B.'s two friends and one of their mothers. *Id.* at 229-37, 241-43, 250-51. The Commonwealth further presented testimony from Detective Kirtley and Jamie Mesar, an expert in the field of child sexual assault and disclosure. *Id.* at 257-78, 199-227. Appellant called his sister, J.M., to testify on his behalf at trial. *Id.* at 279-319.

The jury convicted Appellant of one count each of aggravated indecent assault (person less than 16), unlawful contact with a minor, corruption of minors, endangering the welfare of children (EWOC), and two counts of indecent assault.[4] On April 9, 2024, the trial court sentenced Appellant to an aggregate term of 3½ to 7 years of incarceration, followed by 3 years of probation. Appellant filed a timely post-sentence motion on April 15, 2024. This motion was denied on July 30, 2024. Appellant filed a timely notice of appeal, and both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Did the trial court err in overruling Appellant's objection to the Commonwealth's *voir dire* question that impermissibly sought

---

[4] 18 Pa.C.S. §§ 3125(a)(8), 6318(a)(1), 3601(a)(1), 4303(a)(1), 3126(a)(2), and 3126(a)(8), respectively. Appellant had also been charged with one count of aggravated assault of a child, 18 Pa.C.S. § 3125(b), which was withdrawn by the Commonwealth before trial. The jury acquitted Appellant of two additional charges, aggravated indecent assault (person less than 13), 18 Pa.C.S. § 3125(a)(7); and indecent assault (person less than 13), 18 Pa.C.S. § 3126(a)(7).

to disclose a juror's present opinion under certain facts that were yet to be developed, was in the nature of a jury instruction, and constituted an incorrect statement of the law?

2.     Did the trial court impose an illegal sentence when it sentenced [Appellant] for corruption of minors, when the jury was not instructed on the meaning of "any course of conduct in violation of Chapter 31?"

3.     Did the trial court impose an illegal sentence when it imposed its consecutive three-year term of probation pursuant to 42 Pa.C.S. § 9718.5, which constituted an unlawful *ex post facto* application of that law?

Brief for Appellant at 4.

Appellant first posits that the trial court erred in overruling his objection to the Commonwealth's *voir dire* question regarding the lack of any legal requirement for an alleged sexual assault victim's testimony to be corroborated before a guilty verdict can be rendered. We first note that the scope of *voir dire* rests within the sound discretion of the trial court, and the court's ruling on this issue will not be reversed absent an abuse of discretion. ***Commonwealth v. Walker***, --- A.3d ----, 2025 WL 2402237 (Pa. Aug. 19, 2025). During *voir dire,* neither party is permitted to ask, either directly or via hypothetical, questions designed to disclose what a juror's present impression of the facts may be or what the juror's decision will likely be under the facts developed during trial. **Id.** at *7. *Voir dire* "is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies." **Id.** (citation omitted).

On March 8, 2022, the Commonwealth filed its proposed *voir dire* questions for the jury with the trial court. Therein, the Commonwealth sought to ask the following question of prospective jurors:

> "Under Pennsylvania law, the testimony of the alleged victim standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in a sexual assault case. Thus, you may find the defendant guilty if the testimony of the alleged victim convinces you beyond a reasonable doubt that the defendant is guilty. Would you be able to follow this principle of law?"
>
> The Commonwealth submits that this proposed question is an accurate reflection of 18 Pa.C.S.[] § 3106 and is a relevant area of inquiry for this particular case that is not covered by the Standard Juror Questionnaire.

Commonwealth's Proposed Jury Questions, 3/8/22, at unnumbered 2. Appellant filed his objection to the proposed questions and the trial court issued an order stating that it would permit the following, slightly altered, question to be asked:

> Can you follow the [c]ourt's instruction that the testimony of the alleged victim, standing alone, if believed by you, is sufficient upon which to find the defendant guilty beyond a reasonable doubt in this case[,] without the need to be supported by other evidence?

Order, 5/17/22.[5]

Because the purpose of *voir dire* is to provide counsel with an opportunity to assess the qualifications of prospective jurors, it is appropriate

---

[5] We note that Appellant has not provided this Court with copies of the notes of testimony for *voir dire* in this case. However, the certified record reflects the parties' arguments on this issue, and the parties agree that the question, as formulated by the trial court, was given during jury selection. Accordingly, as our review of this issue is not hampered by the lack of a transcript, we will not find this issue to be waived.

to use *voir dire* to disclose a potential juror's fixed opinions or expose other reasons for disqualification. ***Commonwealth v. Ellison***, 902 A.2d 419, 423 (Pa. 2006). Nonetheless, *voir dire* should not be used to ask direct or hypothetical questions which are designed to disclose the juror's opinion or attitude about what their decision may be under a particular set of facts which might arise during trial. ***Commonwealth v. Knight***, 241 A.3d 620, 640 (Pa. 2020).

> Further, Pennsylvania law explicitly states:
>
> The credibility of a complainant of an offense under this chapter shall be determined by the same standard as is the credibility of a complainant of any other crime. The testimony of a complainant need not be corroborated in prosecutions under this chapter. No instructions shall be given cautioning the jury to view the complainant's testimony in any other way than that in which all complainants' testimony is viewed.

18 Pa.C.S. § 3106.

Appellant here asserts that by asking the *voir dire* question at issue, the Commonwealth was attempting to gauge the juror's reaction to the trial evidence prior to presenting any testimony or argument. Specifically, Appellant argues:

> In the present case, the question at issue was not designed to disclose the fixed opinions of the jurors or to expose other reasons for disqualification for cause. Instead, the question was designed to do exactly what the case law prohibits: expose what a juror's present impression or opinion may be, what his attitude toward principles of law may be, or what decision he may render under certain facts which are yet undeveloped in the case. Here, essentially, the question was designed to allow the Commonwealth to ascertain the effectiveness of its trial strategy because the Commonwealth was reliant on the testimony of the complainant to make its case. Furthermore, the question was

designed to help the Commonwealth exercise its peremptory challenges, allowing it to more easily strike jurors who disagree with its proposed trial strategy. In fact, the question really was a jury instruction; it sought to explain applicable law to the jury, which properly remains within the province of the trial court. The question, too, was inappropriate because it further improperly inquired into each prospective juror's understanding and opinion of specific principles of law and the ability to accept and act upon those principles.

Brief for Appellant at 20-21.

Our Supreme Court recently decided a case involving an almost identical question posed to jurors during *voir dire*. **Walker**, 2025 WL 2402237.

Therein, the Court explained why the *voir dire* question was not improper:

[T]he *voir dire* question in the instant case was not an attempt to discern prospective jurors' existing opinions or beliefs on evidence that might be introduced at trial, nor did it attempt to probe how the jurors might react to the presentation of any particular type of evidence. The question was not posed as a matter of trial strategy, but merely sought to confirm that the prospective jurors would be capable of following a particular principle of law applicable to sexual assault cases. Indeed, as noted by the Commonwealth, regardless of the prospective jurors' answers to the *voir dire* question, its "trial strategy" would have remained the same, as it could not change the fact that the only testimony implicating [the a]ppellant was that of the alleged victim.

*Id.* at *8. The Court further explained:

In light of the fact that sexual offenses under Chapter 31 are unique in that, in most cases, there is no witness to the offense, it is reasonable, in our view, to allow the Commonwealth to inquire of prospective jurors whether they would be capable of following the trial court's instructions regarding the law that the alleged victim's testimony, if believed by the juror, need not be corroborated.

*Id.* at *10. Accordingly, the **Walker** Court found no error occurred in permitting this *voir dire* question to be asked.

Like in the *Walker* case, Appellant was faced here with evidence against him consisting exclusively of the complainant's testimony, with no corroborating physical evidence. There were no witnesses to any assaults, and no forensic evidence in the case. The *voir dire* question at hand is a correct statement of the law, and it was appropriate to consider whether the prospective jurors in this case possessed fixed opinions in conflict with that law. The Commonwealth had a legitimate interest in ascertaining whether jurors could follow that law. *Id.* The court's revised question was designed to secure a competent, fair, and impartial jury. *Id.* Accordingly, the *voir dire* in this case did not run afoul of current legal standards. Appellant is not entitled to relief on this issue.

In his second claim on appeal, Appellant maintains that the trial court imposed an illegal sentence when it sentenced him for corruption of minors as a third-degree felony even though the jury was not instructed on the meaning of "any course of conduct in violation of Chapter 31," a necessary requirement for the felony grading of the offense.[6] Preliminarily, we note that the proper grading of a criminal offense is an issue of statutory interpretation and implicates the legality of the sentence imposed. ***Commonwealth v. Raymond***, 233 A.3d 809, 816 (Pa. Super. 2020). Further, the proper

---

[6] Appellant does not argue that he was improperly convicted of corruption of minors or that the evidence was insufficient to support his conviction; rather, he asserts that the trial court incorrectly graded this conviction as a felony of the third degree. As the sufficiency of the evidence to support his conviction is not before this Court, we take no position on that issue.

interpretation of a statute is a pure question of law, rendering our standard of review as *de novo* and our scope of review as plenary. ***Id.***

We note that Appellant did not object to the jury instruction on the offense of corruption of minors. Our rules of appellate procedure provide that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In addition, to properly preserve a challenge to the adequacy or omission of a particular jury instruction, the defendant must make a specific objection to the jury instruction at trial. ***Commonwealth v. Hitcho***, 123 A.3d 731, 756 (Pa. 2015) (citations omitted); ***see also*** Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.").

However, this Court has treated a similar challenge to the grading of an offense as raising a question about the legality of the sentence, which is a non-waivable issue. ***Commonwealth v. Popow***, 844 A.2d 13, 16-17 (Pa. Super. 2004). We thus address Appellant's claim on its merits.

The corruption-of-minors instruction given at Appellant's trial was as follows:

> Count 4 is Corruption of a Minor. [Appellant] has been charged with corrupting a minor. To find [Appellant] guilty of that

- 10 -

offense, you must find that each of the following three elements have been proven beyond a reasonable doubt.

First, that [Appellant] was 18 years of age or older at the time of the incident giving rise to the charge.

Second, that the minor, [O.B.], was under the age 18 years of age at the time giving rise at the time of the incident given rise to the charge [*sic*].

And, third, that [Appellant] engaged in the course of conduct that constitutes the following sexual offenses under the Crimes Code of Pennsylvania:

Aggravated Indecent Assault of a person less than 13, Aggravated Indecent Assault Less than 16, Indecent Assault, Indecent Assault of a Person less than 13 years of age, Indecent Assault of a Person less than 16.

To define that conduct, [Appellant] corrupted or intended to corrupt the morals of a minor[, O.B].

N.T. Jury Trial at 386-87. We also observe that count 5 (EWOC) in the information, which was explained to the jury immediately after this instruction was given, also involved a claim that Appellant acted according to a course of conduct. During that instruction, the court stated, "A course of conduct means a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." *Id.* at 388. Thus, while the trial court did not specifically define "course of conduct" in the context of the corruption-of-minors statute, it did correctly define the term moments later in a subsequent instruction. Nonetheless, Appellant avers that the error in the instruction makes his conviction and sentence for the felony-grade offense improper, and he can only be sentenced for a first-degree misdemeanor under 18 Pa.C.S. § 6301(a)(1)(i).

Our Crimes Code defines "course of conduct" in multiple instances, and each time, the definition implies that multiple instances of the conduct had occurred; that is to say, there was more than one act over a period of time. *See Commonwealth v. Kelly*, 102 A.3d 1025, 1030-31 (Pa. Super. 2014) (*en banc*) (collecting cases). Thus, our Court has held that "the phrase 'course of conduct' in the first provision of subsection (a)(1)(ii) [of the corruption-of-minors statute] imposes a requirement of multiple acts over time, in the same manner in which the term is used in the harassment, stalking and EWOC statutes." *Id.* at 1031. In the corruption-of-minors statute, the felony grading occurs whenever a defendant, being at least the age of 18, "by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31." 18 Pa.C.S. § 6301(a)(1)(ii).

In reviewing the adequacy of the trial court's instruction, we consider the following principles:

> In reviewing a challenge to a jury instruction, the entire charge is considered, not merely discrete portions thereof. The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury. It is the policy of this Court to give our trial courts latitude and discretion in phrasing instructions.

*Commonwealth v. Johnson*, 107 A.3d 52, 87–88 (Pa. 2014) (internal citation omitted).

- 12 -

The trial court here did define the term "course of conduct" for the jury as requiring multiple instances of conduct. Moreover, the trial court specifically instructed the jury that it had to find that Appellant had corrupted the victim's morals by engaging in conduct that constituted certain sexual offenses, *i.e.*, offenses contained in Chapter 31 of the Crimes Code. It further listed those offenses which had been charged against Appellant. Accordingly, considering the charge given in its entirety, we find that the trial court's instructions clearly and accurately presented to the jury the law with respect to the corruption-of-minors charge. **See Commonwealth v. Smith**, 206 A.3d 551, 564 (Pa. Super. 2019) (finding that a jury instruction which required the jury to find that the appellant had committed acts on "numerous occasions" that tended to corrupt the victim's morals was consistent with the 'course of conduct' requirement contained in the statute). Because the jury was properly instructed on the course of conduct element of the felony grading for corruption-of-minors, Appellant's sentence for that offense as a felony is legal. No relief is due on this claim.

In his final issue on appeal, Appellant maintains that the trial court's imposition of a three-year term of probation pursuant to 42 Pa.C.S. § 9718.5 constituted an unlawful, *ex post facto* application of that law. After review, we are constrained to agree. Thus, we must remand this case for resentencing.

The probation provision at issue became effective on April 23, 2018, and provides:

**(a) Mandatory probation supervision after release from confinement.--**A person who is convicted in a court of this Commonwealth of an offense under section 9799.14(d) (relating to sexual offenses and tier system) shall be sentenced to a mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court.

**(b) Imposition.--**The court may impose the term of probation required under subsection (a) in addition to the maximum sentence permitted for the offense for which the defendant was convicted.

**(c) Authority of court in sentencing.--**There shall be no authority in a court to impose on an offender to which this section is applicable a lesser period of probation than provided for under subsection (a). Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory period of probation provided under this section.

42 Pa.C.S. § 9718.5(a)-(c).

Appellant objected to the trial court's imposition of the three-year probationary term pursuant to Section 9718.5 at sentencing, N.T. Sentencing, 4/9/24, at 38-40, and in his post-sentence motion, on the basis that his offenses occurred no later than 2014. In its brief to this Court, the Commonwealth concedes that the imposition of probation under Section 9718.5 is an unlawful *ex post facto* violation in this case. **See** Brief for Appellee at 36. The trial court did not address this claim. We note that this issue raises another non-waivable challenge to the legality of the sentence imposed. **See Commonwealth v. Succi**, 173 A.3d 269, 285 (Pa. Super. 2017). Our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Verma**, 334 A.3d 941, 951 (Pa. Super. 2025).

Our Supreme Court has explained that an *ex post facto* prohibition

forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or *imposes additional punishment to that then prescribed*." Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation.

*Commonwealth v. Rose*, 127 A.3d 794, 798 (Pa. 2015) (citation omitted; emphasis added). *Rose* explains that "two critical elements" must be met before a criminal law is deemed to be an improper *ex post facto* law: first, the law must be retrospective or, in other words, it must apply to events occurring before its enactment, and second, it must disadvantage the offender affected by it. *Id.* at 799.

Here, Appellant was clearly disadvantaged by the application of Section 9718.5 because the court imposed a three-year period of probation to the end of his incarceration sentence, constituting an additional period of punishment which would not otherwise be inflicted without this law. The question thus becomes whether, under these circumstances, Section 9718.5 applies to "events occurring before its enactment." This is also clearly established.

The effective date of Section 9718.5 was April 23, 2018. The events which underlie Appellant's criminal convictions occurred no later than 2014, when O.B. was 15 years of age. The trial court's application of Section 9718.5 here was thus retrospective, as it increased the sentence imposed relative to conduct which occurred prior to the statute's enactment.

Because the sentencing enhancement law has been imposed retrospectively upon Appellant, and the imposition of the three-year consecutive probationary sentence disadvantaged him, applying Section 9718.5 to Appellant constitutes an *ex post facto* violation. Thus, the trial court's sentence at Count 2, of 30 to 60 months of imprisonment followed by 3 years of probation, is illegal. **See also Commonwealth v. Fluelling**, No. 2986 EDA 2023, unpublished memorandum at *10-11 (Pa. Super. filed Apr. 7, 2025) (finding the imposition of the three-year probationary sentence consecutive to incarceration, when the offense occurred in 2017 and the statute with the increased penalty did not take effect until 2018, was an *ex post facto* violation that rendered the sentence illegal and required resentencing).[7]

Accordingly, we must vacate the portion of Appellant's sentence for aggravated indecent assault (person less than 16) that imposed a consecutive three-year period of probation following his term of imprisonment for that crime. Because our decision potentially impacts the trial court's overall sentencing scheme, we must remand this case for resentencing. **See Commonwealth v. Lekka**, 210 A.3d 343, 358-59 (Pa. Super. 2019) ("If this Court determines that a sentence must be corrected, we are empowered to either amend the sentence directly or to remand to the trial court for resentencing. If we determine that a correction by this Court may upset the

---

[7] **See** Pa.R.A.P. 126(b) (unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

sentencing scheme envisioned by the sentencing court, the better practice is to remand.") (cleaned up).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

9/19/2025