J-E03003-14

2014 PA Super 243

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH LOUIS KELLY, | |
| Appellant | No. 3432 EDA 2012 |

Appeal from the Judgment of Sentence Entered November 14, 2012
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002697-2012

BEFORE:  BENDER, P.J.E., BOWES, J., PANELLA, J., DONOHUE, J.,
   SHOGAN, J., ALLEN, J., LAZARUS, J., WECHT, J., and STABILE, J.

OPINION BY BENDER, P.J.E.:                **FILED OCTOBER 24, 2014**

Appellant, Joseph Louis Kelly, appeals from the judgment of sentence of 30-72 months' incarceration, and a consecutive term of 5 years' probation, imposed following his conviction for corruption of minors and indecent assault.  The question before us is whether the Commonwealth proved, by sufficient evidence, that Appellant engaged in a "course of conduct" as required under the felony grading of the offense of corruption of minors, 18 Pa.C.S. § 6301(a)(1)(ii).  Because we conclude that Appellant did not engage in a "course of conduct" within the meaning of that provision, we vacate his judgment of sentence and remand for resentencing.

This case involved Appellant's sexual abuse of Z.K., a minor with learning disabilities.  During the summer of 2011, Z.K. lived with his mother,

grandmother, and Appellant (his mother's husband), at their home in Chester, Pennsylvania. Appellant was approximately ten years old at that time.[1] Prior to the abuse detailed below, Z.K. indicated that he and Appellant got along "okay[.]" N.T., 8/8/12, at 27.

Z.K. recalled that on a hot day during the summer of 2011, he wanted to visit his friend's house; however, his mother told him that he could not go until he took a bath.[2] Following his mother's instructions, Z.K. went to the upstairs bathroom accompanied by Appellant. This was not unusual, as Appellant "sometimes" helped to "wash [him] up." *Id.* at 36. Appellant's mother was in her bedroom at this time, which was also located on the second floor of the residence.

Z.K. and Appellant did not speak during Z.K.'s bath, and the door to the bathroom was closed. At one point, Appellant grabbed Z.K.'s penis and began "playing with it." *Id.* at 45. Z.K. tried to call out, but he could not because Appellant was using his other hand to cover Z.K.'s mouth. Appellant held his hand over Z.K.'s mouth for "a long time, 'cause I can't – he held my nose, and I can't even breath. … Probably like five minutes I keep on doing that, telling him to get off my – get off my face." *Id.* at 49.

_____

[1] The trial court reports that Z.K. was eleven years old at the time of trial, which occurred the following summer.

[2] Due to Z.K.'s learning disability, he had difficultly recalling the specific date on which these events occurred.

Z.K. recalled that Appellant's right hand covered his mouth while Appellant's left hand played with his penis. Appellant did not speak to Z.K. while this happened.

Z.K. made several attempts to flee the bathroom and tell his mother, but Appellant held him in place and silenced his cries. This continued for about five minutes until Z.K.'s mother came into the bathroom to check on his progress. When she opened the door, Appellant stopped groping and restraining Z.K. and left the bathroom. At that point, Z.K. exited the bathtub and put on his clothes.

Z.K. said that this was the only occasion when Appellant had molested him and that Appellant had previously washed him in the shower or bath without incident. However, on this occasion, Z.K. indicated that Appellant "didn't really clean [his] body." *Id.* at 42. Z.K. did not immediately report the abuse. However, once Appellant left the residence, approximately six weeks after this incident, Z.K. told his mother and grandmother what had happened.

Z.K.'s mother testified that she was still married to Appellant at the time of trial. However Appellant moved out of their Chester residence, in November of 2011, following an argument with her that resulted in the involvement of police. Z.K. told his mother about the bathroom incident in January of 2012. Z.K. did not tell her sooner because Appellant had threatened to harm him, his mother, and his grandmother.

Z.K.'s mother suspected that something had happened between Appellant and Z.K. prior to Z.K.'s disclosure. Her suspicions arose in September of 2011, because Z.K. "didn't want to be around [Appellant] anymore …. Like he wouldn't go to the store with [Appellant] anymore. He wouldn't do activities. Stopped going to the library. He wouldn't be anywhere [Appellant] was at …." *Id.* at 63.

The Commonwealth filed a criminal complaint on January 24, 2012, charging Appellant with three counts of indecent assault, 18 Pa.C.S. § 3126(a)(1), (2) and (7), and one count of corruption of minors, 18 Pa.C.S. § 6301. Immediately prior to Appellant's non-jury trial, the criminal information was amended to reflect the felony gradation of the corruption of minors offense, 18 Pa.C.S. § 6301(a)(1)(ii). The trial was held on August 8, 2012, and the court found Appellant guilty of all counts. The court sentenced Appellant on November 14, 2012, to 30-72 months' incarceration for corruption of minors, and to a consecutive term of five years' probation for indecent assault.

On December 13, 2012, Appellant filed a timely appeal from his judgment of sentence. He also complied in a timely fashion when the trial court ordered him to file a Pa.R.A.P. 1925(b) statement. The trial court filed its Rule 1925(a) opinion on June 13, 2013. Appellant now presents the following question for our review:

> Whether the evidence was insufficient to sustain the conviction for [c]orruption of [m]inors since the Commonwealth failed to prove beyond a reasonable doubt that [Appellant], by any course

of conduct in violation of Chapter 31 [of Title 18] (relating to sexual offenses), corrupted or tended to corrupt the morals of any minor?

Appellant's Brief at 5.

Although Appellant directs his claim at the sufficiency of the evidence supporting his conviction for corruption of minors, his sufficiency claim actually addresses the grading of the offense of corruption of minors rather than the offense itself, as we will discuss in more detail *infra*. Nevertheless, our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

The statute defining the offense of corruption of minors reads, in pertinent part, as follows:

**(a) Offense defined.--**

(1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor

in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

(ii) Whoever, being of the age of 18 years and upwards, *by any course of conduct in violation of Chapter 31* (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a) (emphasis added).

Appellant was convicted under subsection (a)(1)(ii), the felony grading of the corruption of minors statute. The crux of his argument is that the use of the phrase "course of conduct" in subsection (a)(1)(ii) requires "proof of two or more related events that occur over time[,]" and, consequently, that "a single episode does not constitute a course of conduct." Appellant's Brief, at 13. Appellant maintains that this interpretation of "course of conduct" is both the plain meaning of the phrase and consistent with the manner in which it is defined with respect to other offenses in the Crimes Code.

However, the Commonwealth contends that the phrase "course of conduct," as it is used in this statute, simply refers to any action, or series of actions, that gives rise to a Chapter 31 offense. Commonwealth's Brief at 8-9. To that effect, the Commonwealth emphasizes that, unlike its use in other statutes, the phrase "course of conduct" in subsection (a)(1)(ii) is preceded by the term, "any." The Commonwealth argues that the extended phrase, "any course of conduct," takes on a less restrictive meaning than when the phrase "course of conduct" is isolated without the modifier, "any." The Commonwealth contends that this is consistent with the legislative

intent "to increase the grading of the offense when a Chapter 31 sexual offense comprised the act which corrupted or tended to corrupt the morals of a minor." Commonwealth's Brief, at 10.

Appellant's claim demands that we interpret the corruption of minors statute before we determine whether he committed an offense under subsection (a)(1)(ii).

> Because statutory interpretation is a matter of law, our standard of review is *de novo*, and our scope of review is plenary. **Commonwealth v. McClintic**, 589 Pa. 465, 472, 909 A.2d 1241, 1245 (2006). Consequently, we are not bound by the lower court's conclusions regarding the proper meaning of the applicable provisions of this statute. **See Commonwealth v. Kyle**, 582 Pa. 624, 632, 874 A.2d 12, 17 (2005) (holding that our Court owes no duty of deference to the legal conclusions of lower courts regarding an issue of statutory construction).
>
> Our review is further governed by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq.*, under which our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review. **See** 1 Pa.C.S.A. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."); **Nationwide Ins. Co. v. Schneider**, 599 Pa. 131, 143, 960 A.2d 442, 448 (2008). Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute. **Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing**, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). In this regard, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." **Commonwealth v. Rieck Investment Corp.**, 419 Pa. 52, 59–60, 213 A.2d 277, 282 (1965). Consequently, "[a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[;][o]ne must also listen attentively to what it does not say." **Kmonk–Sullivan v. State Farm Mut. Auto. Ins.**

*Co.*, 567 Pa. 514, 525, 788 A.2d 955, 962 (2001) (internal quotations omitted).

***Commonwealth v. Wright***, 14 A.3d 798, 814 (Pa. 2011).

Here, we must construe the meaning of a criminal statue. As such, additional principles apply to our interpretation, such as the statutory mandate that penal statute "shall be strictly construed[.]" 1 Pa.C.S. § 1928(b)(1).

> Of course, the mandate to construe penal statutes narrowly does not override the "general principle that the words of a statute must be construed according to their common and approved usage," and does not require this Court to give the words of a penal statute their "narrowest possible meaning." ***Commonwealth v. Booth***, 564 Pa. 228, 766 A.2d 843, 846 (2001). The mandate "does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." ***Id.*** (internal citation omitted)[.]

***Commonwealth v. McCoy***, 962 A.2d 1160, 1168-69 (Pa. 2009).

The corruption of minors statute was amended in 2010 to include the provision at issue, subsection (a)(1)(ii). Prior to the amendment, subsection (a)(1) only prohibited the offense now set forth in subsection (a)(1)(i). Not surprisingly, then, the instant controversy is a matter of first impression.

The best evidence of the Legislature's intent is the plain text of the statute. Subsection (a)(1)(ii) identifies two distinct offenses. The part at issue addresses the application of the corruption of minors statute to sexual offenses committed by the adult defendant. The second part of subsection

- 8 -

(a)(1)(ii) addresses the application of the corruption of minors statute where the defendant "aids, abets, entices or encourages" a minor to commit a sexual offense. 18 Pa.C.S. § 6301(a)(1)(ii). Considered together, these provisions evidence a clear intent to provide additional penalties when the act or acts that corrupt the morals of a minor are sexual offenses, irrespective of whether the sexual offense was committed by an adult defendant or a minor victim. The question remains, however, whether the Legislature intended the first part of subsection (a)(1)(ii) to reach a single act that gives rise to a sexual offense under Chapter 31, or whether its applicability requires multiple acts in violation of Chapter 31.

Looking elsewhere within the same statute, it is apparent that the Legislature knows how to distinguish between the singular and the plural. The plain language of the second part of subsection (a)(1)(ii) is unambiguous in that a defendant is culpable when he aids or abets in a minor's commission of a *single* Chapter 31 offense, targeting a defendant "who aids, abets, entices or encourages any such minor *in the commission of an offense* under Chapter 31…." ***Id.*** (emphasis added). Similarly, in subsection (a)(1)(i), the Legislature has no trouble stating that a single act, crime, or violation of a court order runs afoul of that provision. 18 Pa.C.S. § 6301(a)(1)(i) (identifying "any act," "any crime," and the violation of "any order of court").

The first provision of subsection (a)(1)(ii) departs from this pattern when it utilizes the phrase, "any course of conduct…." Section 6301 does

not define "course of conduct," however, the phrase is not alien to the Crimes Code. "Course of conduct" is defined in multiple instances elsewhere in the Crimes Code and, in each of those instances, "course of conduct" implies more than one act over time. **See** 18 Pa.C.S. § 2709(f) (defining "[c]ourse of conduct" as used in the statute defining the offense of harassment as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct"); 18 Pa.C.S. § 2709.1(f) (defining "[c]ourse of conduct" as used in the stalking statute as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct"). Although recognizing that the harassment and stalking statutes provide a statutory definition for the phrase, this Court has "explained that `[c]ourse of conduct by its very nature requires a showing of a repetitive pattern of behavior.'" **Commonwealth v. Leach**, 729 A.2d 608, 611 (Pa. Super. 1999) (quoting **Commonwealth v. Urrutia**, 653 A.2d 706, 710 (Pa. Super. 1995)).

The phrase "course of conduct" is also used in the grading of the offense of endangering the welfare of children (EWOC). 18 Pa.C.S. § 4304(b) ("An offense under this section constitutes a misdemeanor of the first degree. However, where there is a *course of conduct* of endangering the welfare of a child, the offense constitutes a felony of the third degree.") (emphasis added). Although the EWOC statue does not define "course of conduct," the phrase is clearly used in that context to differentiate the

- 10 -

penalties for single and multiple endangering acts. Likewise, indecent assault is graded as a third degree felony where "[t]here has been a course of conduct of indecent assault by the person." 18 Pa.C.S. § 3126(b)(3)(ii).

Uses of the phrase "course of conduct" exist in Pennsylvania statutes outside of the Crimes Code. For instance, the CPA[3] Law states that "[i]n any prosecution or proceeding under this act, evidence of the commission of a single act prohibited by this act shall be sufficient to justify an injunction or a conviction without evidence of a general course of conduct." 63 P.S. § 9.15. As was the case with the EWOC statute, the use of the phrase "course of conduct" under the CPA Law is unmistakably distinguishing between multiple and single acts.

Federal law is also consistent with the instances where Pennsylvania law has defined the phrase, "course of conduct." Chapter 110(A) of the Federal Criminal Code, which deals with interstate domestic violence and stalking, states that a "'course of conduct' means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C.A. § 2266(2).

The Commonwealth has not cited, nor have we found, any legal authority in which "course of conduct" is defined or used so as to encompass a single act. Moreover, we cannot discern how the Legislature's employment

---

[3] Certified Public Accountant.

of the term "any," immediately preceding "course of conduct," so fundamentally expands the meaning of the latter phrase to encompass a single act. Indeed, it would be quite a simple matter to legislate the meaning advocated by the Commonwealth by replacing the phrase "course of conduct" with the term "act." That the Legislature chose to utilize the phrase "course of conduct" instead greatly undermines the Commonwealth's interpretation.

Given the well-established meaning of the phrase, "course of conduct," we ascertain no ambiguity in its use in subsection (a)(1)(ii) of the corruption of minors statute. Consequently, we hold that the use of the phrase "course of conduct" in the first provision of subsection (a)(1)(ii) imposes a requirement of multiple acts over time, in the same manner in which the term is used in the harassment, stalking and EWOC statutes. Accordingly, we reject the Commonwealth's contention that "course of conduct" could encompass a single act that gives rise to a Chapter 31 offense.[4]

_____

[4] Contrary to the Commonwealth's argument, this conclusion does not undermine the legislative intent to escalate the sanctions under the corruption of minors statute for acts that constitute Chapter 31 offenses. Indeed, a defendant who commits a Chapter 31 offense against a minor would simultaneously violate subsection (a)(1)(i) of the corruption of minors statute. Individuals who commit multiple acts in violation of Chapter 31, and individuals who aid or abet a minor in the commission of a single Chapter 31 offense, are subject to a greater penalty. While we cannot explain why the Legislature would limit the first part of the felony grading of the corruption of minors offense to multiple acts that give rise to Chapter 31 offenses, we cannot ignore the plain meaning of the text. Moreover, the Commonwealth offers no evidence of the Legislature's specific intent to
*(Footnote Continued Next Page)*

Turning to the evidence in this case, we must conclude that the Commonwealth failed to demonstrate multiple acts in violation of Chapter 31. Even viewing the evidence in a light most favorable to the Commonwealth as the verdict winner, there was only one prohibited act in violation of Chapter 31 that was alleged and proven. That occurred when Appellant grabbed Z.K.'s genitals. Although that single act violated three separate provisions of the indecent assault statute, it did not constitute a "course of conduct" within the plain and universally accepted meaning of that phrase. Furthermore, although Appellant restrained Z.K. while committing the indecent assault, that action was not itself a violation of Chapter 31. And, not inconsequentially, the restraining actions and the indecent assault occurred simultaneously. Accordingly, there was not

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

impose the felony grading of the corruption of minors offense for a single act committed in violation of Chapter 31. Although it may seem strange that the Legislature did not intend to apply the felony grading of the corruption of minors to a single sexual offense, Chapter 31 offenses cover a vast array of prohibited conduct – from indecent exposure to rape. It is certainly plausible that the Legislature did not intend to apply the felony grading of the corruption of minors statute to a single case of indecent exposure to a child, a crime which already carries additional penalties for offenses committed against minors. **See** 18 Pa.C.S. § 3127(b) ("If the person knows or should have known that any of the persons present are less than 16 years of age, indecent exposure under subsection (a) is a misdemeanor of the first degree. Otherwise, indecent exposure under subsection (a) is a misdemeanor of the second degree."). Similar age-based sentencing enhancements are contained in many of the offenses defined in Chapter 31.

sufficient evidence to support the felony grading of the corruption of minors statute as set forth in subsection (a)(1)(ii).

Nevertheless, the evidence was sufficient to support the misdemeanor grading of the corruption of minors offense, subsection (a)(1)(i), and Appellant does not allege otherwise. It is "the settled law in Pennsylvania … that a defendant may be convicted of an offense that is a lesser-included offense of the crime actually charged." ***Commonwealth v. Sims***, 919 A.2d 931, 938 (Pa. 2007).

> A lesser-included offense is a crime having elements of which are a necessary subcomponent of elements of another crime, the greater offense. The elements in the lesser-included offense are all contained in the greater offense; however, the greater offense contains one or more elements not contained in the lesser-included offense.

***Commonwealth v. Reese***, 725 A.2d 190, 191 (Pa. Super. 1999) (quoting ***Commonwealth v. Blackwell***, 647 A.2d 915, 927 (Pa. Super. 1994)).

Here, the first part of both subsections of 18 Pa.C.S. § 6301(a)(1) require a defendant to do something that "corrupts or tends to corrupt the morals of any minor less than 18 years of age…." 18 Pa.C.S. § 6301(a)(1)(i), (ii). In the case of the first part of subsection (a)(1)(i), that 'something' is "any act…." In the case of the first part of subsection (a)(1)(ii), that 'something' is "any course of conduct in violation of Chapter 31…." These are not different elements. Rather, the first provision of subsection (a)(1)(ii) requires additional elements not required by the first provision of subsection (a)(1)(i). As we hold in this opinion, one of the

additional elements in subsection (a)(1)(ii) is that "any course of conduct" requires proof of more than one act, whereas subsection (a)(1)(i) only requires a single act. Furthermore, subsection (a)(1)(ii) requires that the "course of conduct" alleged must constitute one or more Chapter 31 offenses. Thus, the first provision of subsection (a)(1)(i) is a lesser included 'offense' of the 'offense' defined by the first part of subsection (a)(1)(ii).

As we stated in **Reese**, "'upon indictment for a particular crime, a defendant may be convicted of a lesser offense included within that crime.' As long as conviction is for a lesser-included offense, the defendant will have been put on notice of the charges against him and can adequately prepare a defense." **Reese**, 725 A.2d at 191 (quoting **Commonwealth v. Sewell**, 702 A.2d 570, 571 (Pa. Super. 1997)). Here, Appellant was charged with the offense of corruption of minors, and convicted under the felony grading of the offense. Although we conclude that there was insufficient evidence of a violation of the felony grading of that offense, Appellant's commission of an indecent assault against the victim was sufficient evidence of the lesser included crime, that of the misdemeanor grading of corruption of minors. Accordingly, we vacate Appellant's entire sentence and remand for the trial court to resentence Appellant in accordance with this opinion. **See Commonwealth v. Waters**, 988 A.2d 681 (Pa. Super. 2009) (remanding for resentencing on the second-degree felony grading of burglary where there was insufficient evidence of the first-degree felony grading).

Judgment of sentence ***vacated***.  Case ***remanded*** for resentencing. Jurisdiction ***relinquished***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/24/2014</u>