J-S46045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY WENDELL BROWN | : | |
| | : | |
| Appellant | : | No. 1363 WDA 2024 |

Appeal from the Judgment of Sentence Entered February 26, 2024
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000261-2023

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: May 5, 2026**

Appellant, Anthony Wendell Brown, appeals *pro se* from the judgment of sentence entered in the Jefferson County Court of Common Pleas, following his jury trial convictions for one count of corruption of minors, and two counts each of unlawful contact with a minor and indecent assault.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On July 29, 2021, Appellant ran into the victim, M.S., and her father at a gas station. M.S.'s father had worked for Appellant in the past, and they decided to do some work on a house together. The next day, M.S. and her father met Appellant to work on the job, and they later traveled back to Appellant's garage. While there, M.S. asked Appellant if he would take her for a ride on his four-wheeler and he agreed. Appellant drove with M.S. on the four-

_____

[1] 18 Pa.C.S.A. §§ 6301(a)(1)(ii), 6318(a)(1), and 3126(a)(8), respectively.

wheeler to a nearby cemetery to show her a witch's grave. While there, Appellant offered M.S. a hit of marijuana, which she declined. (N.T. Trial, 11/30/23, at 48).

Appellant then offered M.S. an opportunity to drive the four-wheeler back to the garage. On the way back, M.S. stood up on the four-wheeler to see clearer over the top of the next hill. Appellant had his hands on M.S.'s hips while she was driving, and when she sat back down, he slid his hands up and cupped her breasts, telling her that "if anything were to happen, this is what I'd do." (*Id.* at 51).

As they continued driving back to the garage, Appellant and M.S. stopped at a house that Appellant owned to put some air in the four-wheeler's tire. When they arrived at the house, Appellant asked to take a picture of M.S. by the four-wheeler. Appellant then paid M.S. twenty dollars to organize some cups. After she had finished with the cups, she stood up and Appellant kissed her on the cheek and rubbed his hand down her back and touched her buttocks. Appellant told her that he noticed she was not wearing a bra. Appellant and M.S. then returned to the garage where her father was waiting for her.

M.S. told her father what happened that same day and they reported it to police. An investigation ensued and, ultimately, police arrested Appellant and charged him with two counts each of corruption of minors, unlawful contact with a minor, and indecent assault with a person less than 16.

The court scheduled the case for the November trial term. Defense counsel requested a continuance of the trial date, which the court denied. However, the court later granted counsel's request, and the case was ultimately continued until November 30, 2023. During jury selection on November 6, 2023, the court exhausted the initial jury pool and thereafter called a group of county employees and other members of the public who happened to be in the courthouse. (Trial Court Opinion, 12/17/24, at 2).[2]

_____

[2] The transcript of jury selection does not detail the procedure by which the court called more prospective jurors. However, the trial court described the procedure in its opinion, and the parties' briefs agree with the court's description. (*See* Appellant's Brief at unnumbered pages 11-12; Commonwealth's Brief at 3). The court also discussed the procedure during the post-sentence motion hearing. (N.T. Hearing, 6/18/24, at 12-13).

We observe that Rule of Criminal Procedure 635 sets forth the procedure when a jury panel has been exhausted and states:

**Rule 635. Exhaustion of the Jury Panel**

When a sufficient number of qualified jurors are not present to permit selection of a jury, the court shall:

(1) Require the officials designated by law to summon prospective jurors to summon and return immediately from the county at large as many qualified and competent persons as shall be necessary; or

(2) Order in writing that the officials designated by law to summon prospective jurors produce the jury wheel or master list in open court in the presence of the judge, and draw therefrom five names for each juror required. A venire shall then be issued requiring that those persons so drawn be brought into court at a time certain.

*(Footnote Continued Next Page)*

Prior to the commencement of trial, defense counsel orally moved for the court to exclude the testimony of Anjanette Prechtl, a witness who had interviewed M.S. at Penn Highlands, DuBois hospital, based on the late disclosure of this witness. Alternatively, Appellant requested another continuance. The trial court denied both counsel's request to exclude the testimony of the witness and the request for a continuance.

At trial, M.S. testified consistent with the aforementioned facts. Following the Commonwealth's case-in-chief, the trial court granted the Commonwealth's oral motion to dismiss count 1 - corruption of minors. (***See*** N.T. Trial, 11/30/23, at 158). At the conclusion of trial, the jury found Appellant guilty of count 2, - corruption of minors, counts 3 and 4 - unlawful communication with a minor, and counts 5 and 6 - indecent assault. The court ordered a presentence investigation ("PSI") report and a Sexual Offender Assessment Board evaluation.

On February 26, 2024, the court conducted a sentencing hearing. At the hearing, the court reviewed the PSI report and the factors that it considered in fashioning the sentence. The court sentenced Appellant to 2 to 4 years of incarceration on count 2; 4 to 10 years on count 3, concurrent with

---

Pa.R.Crim.P. 635. Because Appellant does not develop any argument regarding to the procedure by which the court summoned additional jurors, we do not address whether the court's procedure complied with Rule 635. Nevertheless, we discuss Appellant's specific challenges to the jury selection ***infra*** in relation to Appellant's first issue on appeal.

count 2; 4 to 10 years on count 4, consecutive with count 2; and explained that counts 5 and 6 merged with count 2.

Appellant filed a timely post-sentence motion challenging the weight of the evidence and arguing that counts 3 and 4, unlawful communication with a minor, should have each been graded as a felony 3. On June 18, 2024, the court conducted a hearing on the motion. Ultimately, the court granted the post-sentence motion in part regarding the grading issue and amended the sentence for counts 3 and 4 to 27 months to 7 years' imprisonment for each count. The court denied the post-sentence motion in all other respects.

On July 10, 2024, Appellant filed a *pro se* single notice of appeal listing both dockets. Thereafter, on July 11, 2024, the trial court issued a Pa.R.A.P. 1925(b) order directing that Appellant file his concise statement within twenty-one days. On July 30, 2024, the trial court issued an order indicating that the court reporter shall "prepare the transcripts regarding each case, file the original," and provide copies to the district attorney's office and Appellant. (Trial Court Order, 7/30/24). On July 31, 2024, Appellant filed a *pro se* request to extend the time to file and serve his concise statement, asserting that he needed the transcripts. The trial court subsequently issued an order granting Appellant's request for an extension of time until 30 days after the mailing of transcripts.

On August 16, 2024, Appellant filed a request to proceed *pro se* with

- 5 -

this Court. This Court remanded for a ***Grazier***[3] hearing, which the trial court conducted. On September 20, 2024, the trial court granted Appellant's request to proceed *pro se* and gave Appellant 21 days from the date of receipt of the last transcript to file his Rule 1925(b) statement. On October 9, 2024, this Court directed Appellant to file separate notices of appeal at each docket. Appellant did so, and this Court docketed the appeal related to docket No. 261-2023 at 1363 WDA 2024 (the current appeal) and docketed the appeal related to No. 34-2023 at 923 WDA 2024. This Court consolidated the appeals *sua sponte* on November 8, 2024.

On October 15, 2024, the trial court entered an order directing the court reporter to "prepare transcripts of everything that has been transcribed during the case in the court of common pleas." (Trial Court Order, 10/15/24). Appellant filed an initial Rule 1925(b) statement on October 28, 2024. On November 25, 2024, the trial court issued an order explaining that Appellant had received all requested transcripts and had 21 days from that date to file his concise statement. Appellant subsequently filed a "Statement of Errors," dated December 22, 2024, and a "Supplemental Statement of Errors," dated December 25, 2024, both of which the court docketed on December 30, 2024.[4]

---

[3] ***Commonwealth v. Grazier***, 552 Pa. 9, 713 A.2d 81 (1998).

[4] We observe that Appellant's later concise statements contained the same errors complained of as the initial statement that Appellant filed on October 28, 2024. Additionally, the trial court responded to all errors raised by
*(Footnote Continued Next Page)*

On August 15, 2025, the Commonwealth filed a petition requesting separation of the appeals at 1363 WDA 2024 and 923 WDA 2024. On September 25, 2025, this Court granted the Commonwealth's motion to vacate the consolidation order.[5]

Appellant raises the following issues on appeal:

> 1) Was the jury pool and subsequently, the petit jury, improperly selected given the fact that the jury pool was flooded with colleagues and co-workers of the prosecutors?
>
> 2) Was the verdict against the weight of the evidence based on the conflicting testimony of the named victim?
>
> 3) Did the [c]ourt err in its discretion by refusing to grant a continuance requested by the defense counsel … after counsel articulated eminently reasonable grounds for the request?
>
> 4) Was the verdict against the sufficiency of the evidence in regard to Count 2?
>
> 5) Was the verdict against the sufficiency of the evidence with regards to Count 3 and 4?

_____

Appellant in its opinion. Thus, any untimeliness in Appellant's December 2024 concise statements does not result in waiver. ***See, e.g., Commonwealth v. Jabbie***, 200 A.3d 500, 504-05 (Pa.Super. 2018) (explaining that we may consider merits of issues raised on appeal where trial court addressed issues in its opinion).

[5] On December 12, 2025, Appellant filed an application for clarification with this Court seeking clarification on whether the Commonwealth received an extension of time in which to file its brief, and seeking additional time for Appellant to respond to the Commonwealth's arguments. After the Commonwealth filed its brief, this Court granted Appellant's request to file a reply brief, and Appellant did so on January 12, 2026. Because Appellant obtained the relief sought in his application for clarification, we deny his request for clarification as moot.

6) Did the [c]ourt err in [its] discretion by not providing a remedy for a prosecutorial discovery violation when the Commonwealth brought in a surprise witness hours before trial as required under Pa.R.Crim.P. 305(E)?

(Appellant's Brief at unnumbered page 2).[6]

In his first issue, Appellant argues that the trial court failed to ensure that the jury selected was impartial. Specifically, Appellant complains the trial court erred when it summoned additional jurors from the Children and Youth Services office, other courthouse and office staff, and members of the public who were in the Jefferson County Courthouse for other proceedings, after the initial jury pool was exhausted.[7] Appellant contends that the close relationship between the prosecution and several of these jurors created a suggestion of bias and the trial court should have stricken the jurors for cause. Appellant further maintains that seven jurors who were summoned as additional jurors had implied biases that required the trial court to strike them for cause.

_____

[6] Appellant's brief contains some sporadic page numbering, however, not all pages are numbered. As such, for consistency, when citing to specific pages in the brief, we have used an unnumbered page method.

[7] Although Appellant mentions the unconventional process that the trial court used in summoning additional potential jurors, he does not develop any argument that the process itself was unconstitutional. Rather, Appellant insists that several jurors selected had been summoned during that process and should have been stricken for cause by the trial court. For the first time in his reply brief, Appellant states that the additionally summoned jurors were clearly "not a fair cross section of the community as required." (**See** Appellant's Reply Brief at 2). Nevertheless, he does not develop a cogent argument to support this claim. **See** Pa.R.A.P. 2119(a) (discussing requirements for argument section). As such we limit our discussion to the issue developed in Appellant's brief concerning whether the court should have stricken the challenged jurors for cause.

Specifically, Appellant argues that Juror #177 was the head of the county tax office and knew the prosecutor and the forensic interviewer, and that her son-in-law works with the sheriff's office. Appellant claims that Juror #180, who was in the courthouse requesting a protection from abuse order in another matter, was biased in favor of the prosecutor, whose office had prosecuted a case involving her in the past. Appellant maintains that Juror #178 worked for Children and Youth Services and had worked with the forensic interviewer and law enforcement in the past. Appellant contends that Juror #140, who works across the hall from the county attorney in the register and recorder's office, was required by her job to maintain a relationship with the county attorney. Appellant suggests that Juror #95 worked at the commissioner's office. Appellant argues that Juror #181 worked in corrections and was currently employed as a victim advocate which would require him to support both the prosecutor as well as the court. Finally, Appellant maintains that Juror #179 was a caseworker for Children and Youth Services and knew the prosecutor and forensic interviewer and worked with them on cases. (**See** Appellant's Brief at unnumbered pages 17-20). Appellant argues that in each of these situations, the trial court was required to grant a challenge for cause, and that the court's failure to do so severely limited the defense's preemptory challenges. Appellant concludes that he is entitled to relief on these grounds. We disagree.

We review a trial court's decision whether to disqualify a potential juror

for an abuse of discretion. **Commonwealth v. Penn**, 132 A.3d 498, 502 (Pa.Super. 2016) (explaining "[t]he decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion") (quoting **Commonwealth v. Ingber**, 516 Pa. 2, 7, 531 A.2d 1101, 1102-03 (1987)).

Pennsylvania Rule of Criminal Procedure 631 sets forth the procedure for individual examination and challenge of jurors, explaining that

> (b) Challenges, both peremptory and for cause, shall be exercised alternately, beginning with the attorney for the Commonwealth, until all jurors are chosen. Challenges shall be exercised immediately after the prospective juror is examined. Once accepted by all parties, a prospective juror shall not be removed by peremptory challenge.

Pa.R.Crim.P. 631(F)(1)(b). "A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice." **Penn, supra** at 502 (quoting **Ingber, supra** at 7, 531 A.2d at 1103).

Additionally, this Court has explained that

> [t]he improper refusal of a challenge for cause is harmless error where the juror is excluded by a peremptory challenge and the defendant does not exhaust his peremptory challenges. **See Ingber**, 531 A.2d at 1104. However, when a defendant has exhausted his peremptory challenges, the wrongful deprivation of one or more of the number of peremptory challenges provided for by statute or rule of court constitutes reversible error.

**Commonwealth v. M. Kelly**, 134 A.3d 59, 62 (Pa.Super. 2016), *appeal denied*, 638 Pa. 655, 158 A.3d 75 (2016).

- 10 -

Instantly, the trial court found that the procedure for selecting the jury did not affect Appellant's rights, and Appellant did not suffer any actual prejudice from the non-traditional process. The court explained its rationale as follows:

> [Appellant] next alleges that the [trial c]ourt erred by selecting his jury in part from a group of county employees and random members of the public who happened to be in the courthouse after the preselected jury pool had been exhausted. A procedural deviation that did not affect [Appellant's] rights, however, the unorthodox process did not create a redressable harm.
>
> *    *    *
>
> In this case, [Appellant] does not identify any actual prejudice; he merely posits that the nontraditional selection process, in and of itself, entitles him to relief. But the November 6, 2023 jury selection transcript is part of the record, and it reflects that each person who served on his jury affirmed his or [her] willingness and ability to sit as a fair and impartial juror, receiving and considering the evidence presented by both sides and rendering a verdict based solely on that evidence.
>
> As the record reflects, moreover, the second group of prospective jurors—the county employees and courthouse patrons—were not treated any differently than the ones who appeared pursuant to [the trial c]ourt summons: Those who demonstrated that they could not or would not follow the law were excused for cause; others could be eliminated with the use of peremptory challenges; and those ultimately seated on the jury unequivocally verified that they were qualified to serve, the end result being that the verdict rendered on November 30, 2023 was delivered by a constitutionally sound jury.

(Trial Court Opinion, 12/17/24, at 2-3).

Upon review, we conclude that Appellant has waived this issue on appeal

- 11 -

because during jury selection, Appellant did not challenge either the jury selection process or any of the specific jurors. *See* Pa.R.A.P. 302(a) (stating issues not raised in trial court are waived and cannot be raised for first time on appeal). *See also Commonwealth v. Doe*, 462 A.2d 762, 765 (Pa.Super. 1983) (holding that issues related to *voir dire* were waived where no specific timely objections were made during *voir dire*). During jury selection defense counsel did not request any challenges for cause nor did defense counsel exercise any peremptory challenges. *See* Pa.R.Crim.P. 631(F)(1)(b). Thus, Appellant did not preserve his claim in the trial court and has waived this issue on appeal. *See id.*

Moreover, our review of the *voir dire* transcript does not reveal any ongoing relationships that would demonstrate presumed bias. Although several jurors knew the prosecutor in this case, none had close relationships with him, and each answered that they would be able to be fair and impartial in determining the case. (*See* N.T. Jury Selection, 11/6/23, at 164-207). *See also Commonwealth v. Bright*, 420 A.2d 714, 716 (Pa.Super. 1980) (explaining that merely knowing prosecuting attorney does not warrant disqualification where prospective juror's answers during *voir dire* indicate ability to be impartial and there is no close familial, financial or situational relationship). Thus, Appellant is not entitled to relief on his first issue.

In his second issue, Appellant attacks the credibility of M.S.'s testimony. Appellant claims that M.S. was impeached at trial both through her prior

statements and conflicting testimony from other witnesses. Appellant insists that because the Commonwealth's case relied on M.S.'s statements, the verdict was against the weight of the evidence. Appellant concludes the trial court erred in denying his request for a new trial on this ground. We disagree.

Our standard of review of a challenge to the denial of a motion for a new trial based on the weight of the evidence is well settled:

> A verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the evidence claim is addressed to the discretion of the trial court, and a new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine whether, notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice.
>
> In reviewing a challenge to the weight of the evidence, the function of an appellate court is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. Appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose an abuse of discretion.

***Commonwealth v. Anderson***, ___ Pa. ____, ____, 323 A.3d 744, 756-57 (2024) (internal citations, quotation marks, and brackets omitted). A verdict will only be reversed on this basis where the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Chine***, 40 A.3d 1239, 1243 (Pa.Super. 2012), *appeal denied*, 619 Pa. 685, 63 A.3d 773 (2013). "One of the least assailable reasons

- 13 -

for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Commonwealth v. Clay***, 619 Pa. 423, 432, 64 A.3d 1049, 1055 (2013) (citation omitted).  Furthermore, the jury, as finder of fact, has the duty to determine the credibility of the witnesses and evidence presented at trial.  ***See Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact").

Instantly, in denying the request for a new trial based upon Appellant's weight of the evidence claim, the trial court explained:

> … [Appellant] says the verdict was against the weight of the evidence because of [M.S.'s] testimonial inconsistencies and, therefore, that the [c]ourt erred in failing to vacate the verdict on that basis.  As the trial transcript reveals, however, those inconsistencies were not so numerous or glaring as to render her account objectively unbelievable. That being the case, the jury alone got to weigh her testimony and decide whether to believe her.  As its verdict reflects, it ultimately decided she was credible, and this [c]ourt had no authority, even were it so inclined, to overrule the jury's decision.  Accordingly, the error alleged here was no error at all.

(Trial Court Opinion, 12/17/24, at 4).  On this record, we cannot say that the trial court abused its discretion in denying Appellant's challenge to the weight of the evidence.  ***See Anderson, supra***.  Appellant's second issue merits no relief.

In his third issue, Appellant argues that the trial court erred when it denied defense counsel's pre-trial request for a continuance.  Appellant

asserts that the Commonwealth presented an exceptionally weak case resting upon the testimony of M.S. Appellant claims that M.S.'s "incompetence" resulted in defense counsel needing extensive time to prepare for trial because the victim lacked the mental competency to give an accurate account.[8] Appellant insists that there was no valid reason to deny the continuance request and that the court's failure to grant the continuance was an abuse of discretion. We disagree.

It is well settled that the granting or denial of a motion for continuance is within the sound discretion of the trial court and this Court will only reverse the trial court upon a showing of an abuse of discretion. **Commonwealth v. Ross**, 57 A.3d 85, 91 (Pa.Super. 2012), *appeal denied*, 621 Pa. 657, 72 A.3d 603 (2013). "This Court has observed that trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." **Commonwealth v. Norton**, 144 A.3d 139, 143 (Pa.Super. 2016) (citation and internal quotation marks omitted).

---

[8] Although Appellant refers to M.S.'s alleged "incompetence" on appeal, he did not challenge her competence to testify in the trial court. Rather, Appellant claims that the inconsistencies in M.S.'s testimony demonstrate that she was "mentally incapable of correctly perceiving the event" and is "wholly untrustworthy." (Appellant's Brief at unnumbered page 26). In other words, Appellant's claims of M.S.'s "incompetence" are a challenge to her credibility based on alleged inconsistencies in her testimony.

Furthermore, "[a]n appellant must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice." **Ross, supra** at 91 (citation omitted).

Instantly, Appellant's argument focuses solely on the inconsistencies in M.S.'s testimony, such that he claims he needed more time to "properly and effectively make the case that the alleged victim was mentally incompetent to testify." (Appellant's Brief at unnumbered page 38). Nevertheless, Appellant has not provided any specifics as to how he would have prepared differently or in what way he was unable to prepare his defense. (**See id.** at unnumbered pages 34-38). Rather, Appellant's argument concerns numerous inconsistencies in M.S.'s testimony, specifically concerning her recollection of the route that was driven to the cemetery and whether Appellant's hands brushed, cupped, or grabbed her breasts and buttocks. Our review of the trial transcript reveals that counsel was able to address these inconsistencies during his cross examination of M.S. Hence, Appellant has not established that he was prejudiced by the trial court's denial of his pre-trial continuance request.[9] Therefore, we cannot conclude that the court abused its discretion

_____

[9] Furthermore, although the court initially denied one of Appellant's pre-trial continuance requests by order dated October 26, 2023, the court subsequently granted a continuance at the request of defense counsel and
*(Footnote Continued Next Page)*

in denying the continuance. **See Ross, supra**. Appellant's third issue merits no relief.

In his fourth issue, Appellant argues that the evidence was insufficient to sustain his conviction for corruption of minors. Specifically, Appellant challenges the element of a "course of conduct," which he argues imposes a requirement of multiple acts over time. Appellant insists that the victim's testimony that Appellant touched her breasts and buttocks does not satisfy the course of conduct element because the acts occurred on the same day and within less than an hour of each other and should have been viewed as a singular act. Appellant concludes the evidence was insufficient to sustain his conviction for corruption of minors on this ground. We disagree.

Our standard of review of a challenge to the sufficiency of the evidence supporting a conviction is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every

---

with the Commonwealth's consent, moving the trial date from November 21, 2023 to November 30, 2023.

element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa.Super. 2019), *appeal denied*, 655 Pa. 61, 217 A.3d 202 (2019) (quoting *Commonwealth v. Davison*, 177 A.3d 955, 957 (Pa.Super. 2018)).

The Crimes Code defines the offense of corruption of minors as follows:

**§ 6301. Corruption of minors**

**(a) Offense defined.—**

\* \* \*

(ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S.A. § 6301(a)(1)(ii). This Court has held "that the use of the phrase 'course of conduct' in ... subsection (a)(1)(ii) imposes a requirement of multiple acts over time[.]" *Commonwealth v. J. Kelly*, 102 A.3d 1025, 1031 (Pa.Super. 2014) (*en banc*).

In *J. Kelly*, the appellant was charged with corruption of minors in violation of section 6301(a)(1)(ii) for a single incident where the appellant assaulted his stepson. After he was convicted, the appellant appealed,

arguing the evidence was insufficient to support his conviction because there was no evidence of "two or more related events that occur[ed] over time[.]" *Id.* at 1029. This Court agreed and held that because the Commonwealth presented evidence of only one incident, there was insufficient evidence to establish a course of conduct. *Id.* at 1032 (concluding that single act of grabbing person's genitals could not constitute "course of conduct"). *Compare Commonwealth v. Cahill*, No. 552 EDA 2025, unpublished memorandum at 19 (Pa.Super. filed Mar. 12, 2026) (concluding that "[a]ppellant rubbing [victim's] vagina and then, separately, groping her breasts" satisfied elemental requirement for "course of conduct").[10]

Here, the facts of this case are distinguishable from *J. Kelly* because Appellant engaged in two distinct acts of indecent assault, which formed the course of conduct necessary to establish the single count of corruption of minors for which Appellant was convicted. The first occurred when Appellant cupped the victim's breasts while they were riding on the four-wheeler. The second occurred when Appellant touched the victim's buttocks while at his house. However short the time between the acts may have been, there occurred two distinct indecent assaults, satisfying the "course of conduct" element of the offense. *See J. Kelly, supra*. Thus, the evidence was sufficient to support the conviction for corruption of minors, and Appellant's

_____

[10] *See* Pa.R.A.P. 126(b)(1) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

fourth issue merits no relief.

In his fifth issue, Appellant argues that the evidence was insufficient to establish his convictions for unlawful contact with a minor. Appellant contends that although verbal communication occurred between himself and M.S. prior to the alleged touching of M.S.'s breasts, the communication was not intended to engage in any sexual conduct. Appellant insists that no communication occurred at all prior to the alleged touching of M.S.'s buttocks. Appellant concludes the evidence was insufficient to establish either count of unlawful contact with a minor, and this Court must grant relief. We disagree.

The Crimes Code defines unlawful contact with a minor as follows:

> **§ 6318. Unlawful contact with minor**
>
> **(a) Offense defined.**--A person commits an offense if the person is intentionally in contact with a minor, … for the purpose of engaging in an activity prohibited under any of the following provisions under this title, and either the person initiating the contact or the person being contacted is within the Commonwealth:
>
> \* \* \*
>
> (4.2) Corruption of minors as defined in section 6301(a)(1)(ii).

18 Pa.C.S.A. § 6318(a)(4.2).

Our Supreme Court has explained that any communication, verbal or non-verbal, suffices so long as it is "designed to induce or otherwise further the sexual exploitation of children." ***Commonwealth v. Strunk***, ___ Pa. ___, ___, 325 A.3d 530, 543 (2024). ***See also Commonwealth v. Reyes***,

350 A.3d 988, 999 (Pa.Super. 2025) (concluding that appellant telling victim to sit in front seat of his car, which was close enough for his subsequent attempts to touch her, viewed in light most favorable to Commonwealth, was sufficient to prove his direct communication with her for purpose of engaging in activity prohibited).

In *Commonwealth v. Leatherby*, 116 A.3d 73 (Pa.Super. 2015), this Court considered whether evidence was sufficient to establish the appellant's conviction for unlawful contact with a minor with respect to the appellant's three victims, M.S., F.G., and S.G. In the first instance, this Court concluded that the evidence was not sufficient to support the appellant's conviction for unlawful contact as to M.S. where the appellant did not say anything prior to touching her breasts while she slept. *Id.* at 80. However, this Court upheld the appellant's conviction with respect to F.G., whom the appellant told to "give him a hug" before engaging in inappropriate touching. *Id.* Finally, this Court found that the appellant had engaged in non-verbal communication, which was sufficient to support the offense of unlawful contact, where the appellant intentionally remained silent when S.G. knocked on the bathroom door causing S.G. to walk in on him naked. *Id.* at 81.

In the instant case, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient for the jury to infer that Appellant's purpose in communicating with M.S. was to engage in one of the listed sexual offenses, even if the nature of the communications

itself was not overtly sexual. Specifically, it was reasonable for the jury to infer that Appellant communicated with M.S. when he offered that she could drive the four-wheeler back from the cemetery, which facilitated a seating arrangement where Appellant was holding onto M.S. from behind and was able to cup her breasts. Furthermore, it would be reasonable for the jury to infer that Appellant's statement that "if anything were to happen, this is what I'd do" was made to facilitate Appellant moving his hands from M.S.'s waist to her chest and cupping her breasts. (**See** N.T. Trial, 11/30/23, at 51). **See Leatherby, supra**. Additionally, it is reasonable to infer that Appellant's actions of asking M.S. to take a picture with him by the four-wheeler and then kissing her on the cheek were both verbal and non-verbal communication to facilitate Appellant rubbing his hand down her back and touching her buttock. **See Strunk, supra**; **Reyes, supra**. Based upon the foregoing, the evidence was sufficient for the jury as the finder of fact to conclude that Appellant made statements and engaged in actions for the purpose of having unlawful contact with M.S. Appellant's fifth issue does not merit relief.

Finally, in his sixth issue, Appellant argues that the court failed to apply Rule of Criminal Procedure 573,[11] when it permitted the Commonwealth to introduce the testimony of Ms. Prechtl on the eve of trial. Appellant contends

---

[11] Appellant refers both to Rule of Criminal Procedure 573 and 305 in his brief. We note that Pennsylvania Rule of Criminal Procedure 305 was renumbered as Rule 573 in 2022. Accordingly, we refer to Rule 573 in our discussion.

that Ms. Prechtl's testimony concerning what M.S. told her at the hospital about the details of the assaults was inconsistent with what he claims actually happened. Appellant asserts that this last-minute disclosure of "expert testimony"[12] constituted trial by ambush and violated Rule of Criminal Procedure 573. We disagree.

Our standard of review of the trial court's evidentiary decisions is limited to whether the trial court abused its discretion. *Commonwealth v. Belani*, 101 A.3d 1156, 1160 (Pa.Super. 2014). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion." *Commonwealth v. Cook*, 231 A.3d 913, 919 (Pa.Super. 2020) (citation omitted). Rather, an abuse of discretion occurs only where the trial court has committed an error of law, or "when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted). Further, to the extent we are required to review the trial court's conclusions of law, "our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Wilmer*, 648 Pa. 577, 583, 194 A.3d 564, 567 (2018).

Pennsylvania Rule of Criminal Procedure 573(D) imposes a continuing duty on both parties to disclose additional witnesses discovered before or during trial, stating that "[i]f, prior to or during trial, either party discovers ...

_____

[12] Although Appellant refers to Ms. Prechtl's testimony as expert testimony, she testified as a lay witness at trial.

the identity of an additional witness … such party shall promptly notify the opposing party or the court of the additional … witness." Pa.R.Crim.P. 573(D). Rule 573 does not specifically address the timing of disclosures.

Rule 573(E) gives the trial court broad discretion to impose remedies for discovery violations, explaining that if either party fails to comply with Rule 573, the trial court may grant a continuance or prohibit such party from introducing the evidence that was not disclosed. Pa.R.Crim.P. 573(E). Our Supreme Court has explained that "discovery violations do not automatically entitle an appellant to a new trial; the appellant must demonstrate that the violation resulted in prejudice." *Commonwealth v. Dunn*, ___ Pa. ___, ___, 300 A.3d 324, 338 (2023) (citation omitted). "Our case law suggests that prejudice in this context requires an appellant to demonstrate that a timelier disclosure would have affected his trial strategy or otherwise resulted in prejudice in the typical outcome determinative sense." *Id.*

Here, the Commonwealth notified Appellant on the day before trial that it would be presenting the testimony of Ms. Prechtl, who was an admissions coordinator at Penn Highlands Hospital and who had encountered M.S. when she was admitted there. Ms. Prechtl completed a ChildLine Report after speaking with M.S. and learning the details of the assaults in this case. At the start of trial, Appellant asked the trial court to exclude Ms. Prechtl's testimony or provide a continuance. The prosecutor explained that although he was aware of her name earlier, Ms. Prechtl had only contacted him the day before,

when he interviewed her over the phone, and he provided the substance of her testimony to defense counsel thereafter. The prosecutor further explained that defense counsel was aware of M.S.'s hospitalization and the ChildLine report that had resulted therefrom. The trial court found no violation of Rule 573 under these circumstances, and later explained its reasons as follows:

> As it turned out, however, [Ms. Prechtl's] identity was ascertainable by reference to the police report. Moreover, the district attorney divulged the substance of their pre-trial interview immediately after conducting it, and her testimony merely corroborated portions of [M.S.'s] account in any event. That being the case, it did not run afoul of the Rules … nor did it introduce new facts counsel or the defendant needed time to explore.

(Trial Court Opinion, 12/17/24, at 2) (record citations omitted).

On this record, we cannot say that the court abused its discretion in allowing Ms. Prechtl to testify at trial. Further, while Appellant baldly contends that the late disclosure affected his trial strategy, he has not demonstrated how a more timely disclosure of Ms. Prechtl being called as a witness would have affected the trial strategy or how he was otherwise prejudiced. *See* *Dunn, supra*; *Belani, supra*. Thus, Appellant's sixth issue is meritless. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 5/5/2026